**2022 UT App 111**

## THE UTAH COURT OF APPEALS

RANELLE WALLACE,
Appellant,
*v.*
NIELS FUGAL SONS CO. AND PATHWAY DIRECTIONAL BORING AND
UNDERGROUND UTILITY LLC,
Appellees.

Opinion
No. 20210031-CA
Filed September 22, 2022

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 160903144

Bret P. Bryce, Attorney for Appellant

Bruce C. Burt, Attorney for Appellees

JUDGE DAVID MORTENSEN authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN FORSTER and SENIOR JUDGE KATE
APPLEBY concurred.[1]

MORTENSEN, Judge:

¶1      This is a case of a pro se litigant that wasn't. Ranelle
Wallace was injured in a bicycle accident and sued several
entities, alleging that the accident resulted from negligent repair
of a parking strip. The case was not resolved for several years, and
eventually a trial date was set. But after a failed mediation,
Wallace's attorney sought to withdraw, citing irreconcilable
differences. What followed was a confusing series of motions, the
appearances of additional attorneys, and Wallace's putative
status as a pro se litigant. After Wallace failed to timely file her

_____

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

pretrial disclosures, the district court granted the defendants' motion to exclude Wallace's witnesses and documents, and because this left Wallace with no ability to proceed, dismissed the case. We affirm.

## BACKGROUND

### *The Accident and Lawsuit*

¶2 In October 2014, Wallace was in a bicycle accident after she cut diagonally across a parking strip corner formed where a driveway approach met the abutting sidewalk. The front tire of her bicycle became caught in the approximately four-inch drop-off in the parking strip corner, resulting in Wallace "falling face first on the concrete."

¶3 In May 2016, Wallace sued Niels Fugal Sons Co. and others (collectively, Fugal), who were contractors involved in installing an underground cable, alleging negligence in failing to fill the parking strip to bring it up to grade with the adjacent sidewalk and curbing, which caused Wallace to crash and sustain injuries.[2] Wallace was represented by two attorneys: James Hasenyager, who represented Wallace from the time she filed her initial complaint, and Lani Wallace (Lani), who entered her appearance in July 2017.[3] Lani is Hasenyager's daughter and co-counsel, but

---

2. Wallace originally sued Niels Fugal Sons Co. and CenturyLink. Fugal subsequently brought in Pathway Directional Boring and Underground Utility LLC (Pathway) as a third-party defendant. Wallace was allowed to amend her complaint to include Pathway. In February 2017, the parties stipulated to dismiss CenturyLink without prejudice.

3. The record gives no indication that Ranelle Wallace and Lani Wallace are related. To avoid confusion, we refer to Lani Wallace by her given name.

there is no indication in the record, apart from sharing the same address, that they belonged to the same law firm.[4]

¶4    In January 2019—after completion of fact discovery—Fugal moved for summary judgment, arguing that there was no evidence that it owed a duty to Wallace or that it breached an alleged duty. The district court denied the motion. Then, in May 2019, the court filed a notice of intent to dismiss for failure to file a certificate of readiness for trial within 330 days of the filing of the first answer to the complaint. *See* Utah R. Jud. Admin. 4-103(2). Within a few days, Wallace certified the matter ready to proceed and requested a trial date. In June 2019, the court set the trial date for January 6, 7, 9, and 10, 2020, directing the parties to exchange witness and exhibit disclosures twenty-eight days before trial.

*Original Counsel Attempts to Withdraw*

¶5    On October 2, 2019, the parties unsuccessfully attempted to mediate the case. The next day, Hasenyager moved for permission to withdraw; he explained that he and Wallace had "developed irreconcilable differences as to the handling of this case," making it "impossible" for him to continue as counsel. On October 15, the court granted Hasenyager's motion to withdraw.

¶6    On October 16, Fugal served notice on Wallace to appear on her own behalf or to appoint new counsel. The notice was sent to her St. George, Utah, address. On November 6, Fugal filed a motion to dismiss for failure to appear or appoint counsel and mailed it to Wallace. On the same day, Fugal served a rule 68 settlement offer on Wallace. *See* Utah R. Civ. P. 68 (describing an offer to resolve all claims between parties).

¶7    On November 7, Lani filed a motion to withdraw as Wallace's counsel, stating that it was "impossible" to continue

---

4. Indeed, the captions on their court filings lists Hasenyager's firm as "Hasenyager Law" and Lani's firm as "Lani K. Wallace, Attorney at Law, PLLC."

because she and Wallace had "developed irreconcilable differences as to the handling of this case." Notice of Lani's motion to withdraw was served on Wallace.

¶8      On November 12, the court received a "Motion to Extend Time to find New Attorney/Represent Myself" from Wallace. It stated,

> I would like to file an extension to request more time to find a new lawyer in regard to my civil case . . . that went thru mediation that failed to resolve my case and subsequently, I lost representation.

> I am close to finding the right counsel for my case[.] In the meantime, I would like to file representing myself in order to have any docs regarding my case be sent to me at the address or to the emails below.

The motion, which was signed by Wallace and provided her St. George address along with two email addresses, was in the form of a letter from Wallace to the Second District Court in the care of the judge assigned to the case. It was dated November 3 and postmarked November 7. It does not appear to have been served on Fugal.

¶9      On November 29, Fugal filed its pretrial disclosures, and the next day, it filed proposed jury instructions, including one stating that Wallace was representing herself.

*New Counsel Attempts to Enter*

¶10      On December 2, Bret Bryce filed a notice of appearance as counsel for Wallace, a role in which he continues on appeal.[5] On December 3, Bryce filed an opposition to Fugal's November 6

---

5. Bryce's Notice of Appearance is dated December 2, but the case docket shows that it was filed on December 3.

motion to dismiss and a notice to submit for decision Wallace's November 12 motion to extend the time to retain a new attorney.

¶11    Also on December 3, Fugal filed several motions in limine, asking, among other things, that the court limit evidence to what was produced during discovery: "To prevent surprise, [Fugal] seek[s] to limit admissible evidence to that which was produced in discovery. If the parties did not properly and timely disclose evidence in discovery, it should not be allowed to come into evidence." Both Wallace and Bryce were served these motions.

¶12    A docket note was entered on December 3, apparently in response to Lani's motion to withdraw, *supra* ¶ 7: "The Court does not permit an attorney to withdraw once a case is set for trial. This case is set in Jan 2020 for jury trial."

¶13    Also on December 3, at around 3:45 p.m., Bryce sent an email to Fugal's counsel:

> Wallace told me she thought you were trying to set a trial for January but thought the court was ordering further mediation, in any case, I did not know that there was a trial date set. I don't think it is very realistic to get up to speed and prepared for a trial that is weeks away and meet our pre-trial deadlines (what are they, btw?).[6]

Within approximately thirty minutes, Fugal's counsel responded,

> I'm not sure what to tell you. There was a mediation and it failed. There was an offer of judgment and [Wallace] rejected it. No more money will be offered

---

6. We note that Bryce and Fugal's counsel had exchanged email messages earlier in the day about the settlement offer made to Wallace. In this exchange, Fugal's counsel requested of Bryce, "Please advise when I can receive your pre-trial disclosures and when we can talk about jury instructions."

> on this case. There was never ANY discussion about a second mediation. The trial date has now been set for quite a while and this information was available to you (via *Greenfiling*) when you made your appearance.
>
> What's realistic for you and for my clients are two very different things. Unfortunately, when you made your appearance you did so knowing you were subject to all of the current deadlines, including the trial date. Non-refundable retainers were paid to our experts. Witnesses are arranging their schedules to come prepared for my case. Tens of thousands of dollars have been spent getting this case ready for the trial.
>
> I'm working 7 days per week to have this case ready to present on January 6, 2020 and to handle all of my other cases. This is the nature of trial work. I'm happy to discuss with you deadlines for witness and document disclosures, but we insist on keeping the trial date.

Fugal's counsel then emailed Bryce and Lani at around 11:00 p.m. that same day:

> I'd like to schedule a time for a teleconference this week to discuss pretrial disclosures, exhibit and witness lists, jury instructions and the verdict form. I am happy to work with you on a brief extension to submit your pre trial disclosures if you need it and we can talk about that too.

¶14 On December 4, apparently in response to Wallace's motion to extend time to find a new attorney, *supra* ¶ 8, a note was entered (presumably by a clerk) in the docket: "Case is set for jury trial Jan 6, 2020. New attorney can not come on board at this

stage." Two hours later, Hasenyager requested "a telephone conference be set in this matter between . . . Hasenyager, [Fugal's counsel], and . . . Bryce to discuss case." Significantly, approximately three hours after Hasenyager filed the request for the conference, this note was entered in the docket: "Clerk will hold Order on Motion to Withdraw as counsel until the telephone conference."

¶15 The conference took place on December 10. The minute entry, which identified Hasenyager and Bryce as counsel for Wallace, indicates that (1) the court granted the "motion to withdraw for" Hasenyager and Lani and (2) the "[j]ury [t]rial will stay as scheduled."[7] On December 11, the court signed an order allowing Lani to withdraw.

¶16 On December 12, another attorney—Lucas Adams—filed an appearance to represent Wallace "in conjunction with" Bryce. The same day, Fugal filed (1) a motion to exclude Wallace from offering medical evidence apart from her disclosed expert and (2) a motion to exclude exhibits and witnesses not disclosed at least twenty-eight days before trial. *See* Utah R. Civ. P. 26(a)(5)(B). These motions were served on Bryce and Adams.

¶17 On December 13, during a telephone conference that Adams requested—the minute entry for which identifies Adams as Wallace's counsel—the court determined that it would allow Adams to enter an appearance as counsel but would not continue the trial or extend disclosure deadlines. The court also said it would allow Adams to withdraw on December 16, noting that if

---

7. We note that the court had already granted Hasenyager's motion to withdraw on October 15. *Supra* ¶ 5. Thus, it is unclear whether the "hold" placed on the motion to withdraw referred to Hasenyager's motion, Lani's motion, or both. But it does not matter to our analysis, because in any of the three scenarios, when her disclosures were due, Wallace had representation (either both Hasenyager and Lani or Lani alone).

he did not, he would remain as counsel for trial. Adams withdrew as counsel on December 16.

¶18 Also on December 16, Wallace—from this point represented by Bryce alone—filed a motion to extend time to file pretrial disclosures and also submitted pretrial disclosures. On December 20, Wallace, through Bryce, submitted her own rule 68 offer of settlement. And on December 23, Wallace filed ten motions, many in opposition to Fugal's previously filed motions, related to evidence, theories of damages and liability, and remedial measures. Notably, all those motions were filed by Bryce, who was acting as Wallace's counsel despite the court's earlier note that a new attorney could not "come on board." *Supra* ¶ 14.

*The Court's Decision*

¶19 On December 27, after oral argument on the pending motions, the court granted Fugal's motion to exclude witnesses and documents, dismissed the case, and ordered the trial dates stricken. On January 2, 2020, the court issued eight orders pertaining to the specific evidence, witnesses, and use of legal theories covered in Fugal's motions. In granting the motion to exclude witnesses and documents, the court ruled as follows: "[Wallace] may not use any documents at trial, nor may [she] call any witnesses at trial, including herself. Accordingly, [her] lawsuit is hereby dismissed with prejudice because she cannot establish her causes of action."[8]

---

8. Wallace conceded at oral argument that it was appropriate for the court to dismiss her case once it excluded her witnesses. As Wallace stated in her brief, granting the motion to exclude "effectively dismiss[ed]" the case. Thus, Wallace does not appeal the district court's conclusion that with all her witnesses, including herself, and documents excluded, dismissal of the case was warranted.

¶20 On January 30, Wallace filed a motion for relief from an order under rule 60(b) of the Utah Rules of Civil Procedure, arguing that (1) the court violated Wallace's due process rights when it "forced" her to proceed pro se without an explanation of her obligations regarding pretrial disclosures; (2) Wallace should have been permitted more time to file her pretrial disclosures "because her situation met the standard of excusable neglect" under rule 60(b)(1) of the Utah Rules of Civil Procedure; and (3) Fugal "committed misrepresentation, misconduct, and fraud upon [the] court by pursuing a pattern of consistently misrepresenting the facts" to prejudice the court against Wallace and get Wallace's action dismissed "in violation of [her] due process rights."

¶21 Regarding her assertion of excusable neglect, Wallace argued,

> The delay was not within the reasonable control of [Wallace]. [Hasenyager] withdrew for medical reasons because he did not want to conduct her trial after mediation failed to achieve a settlement, and her new counsel was not sure if he was even recognized by the court to file pretrial disclosures until the telephonic conference between the court, Mr. Adams, and [Fugal's counsel] on December 13, 2019. Because of [Wallace's] health, her counsel's health, and confusion as to who was representing her, as well as ignorance of due dates, [Wallace] did not have the option to file her pretrial disclosures until December 13, 2019[.]

¶22 In mid-February, Wallace filed a declaration stating that she never fired Hasenyager, that Hasenyager told her he had a debilitating illness and would not be able to take her case to trial, that Fugal's counsel became "belligerent and angry and threatening" when he called her after Hasenyager's withdrawal, and that she had difficulty finding a new attorney "on such short notice and so close to trial." In a second declaration filed six days

later, Wallace stated that "neither . . . Hasenyager, [Fugal's counsel], nor the court ever gave [her] notice of pretrial deadlines or the trial date."

¶23　Also in mid-February, Hasenyager signed an affidavit stating that he "withdrew from the case because of 'irreconcilable differences'" after mediation failed. He also stated that when he filed his October 3 motion to withdraw, his "assumption was that [he] and Lani . . . were withdrawing." But in November, "when it became apparent that the [district court] still had Lani . . . as an attorney for [Wallace], [Hasenyager] filed a motion to withdraw for her to clarify that she was, in fact, withdrawn from the case."[9]

¶24　Some months later, in December 2020, the court issued a memorandum decision denying Wallace's motion for relief.

¶25　Wallace appeals the district court's decision to grant Fugal's motion to exclude documents and witnesses, which led to the dismissal of her case, and its denial of her rule 60(b) motion.[10]

ISSUES AND STANDARDS OF REVIEW

¶26　Wallace first contends that the district court abused its discretion when it granted Fugal's motion to exclude her documents and witnesses, which resulted in the dismissal of the case. "A district court has broad discretion in selecting and

_____

9. To be clear, Lani—not Hasenyager—signed her motion to withdraw. Moreover, we note that, contrary to Hasenyager's statement that Lani's motion "clarif[ied] that she was, in fact, withdrawn from the case," the Utah Rules of Civil Procedure make clear that if a "trial has been set, an attorney may not withdraw except upon motion and order of the court." *See* Utah R. Civ. P. 74(a).

10. Wallace also appeals the court's rulings on all of Fugal's other motions in limine, but because of the manner in which we resolve this appeal, we need not consider these other arguments.

imposing sanctions for discovery violations under rule 26. Appellate courts may not interfere with such discretion unless there is either an erroneous conclusion of law or no evidentiary basis" for the district court's ruling. *VT Holdings LLC v. My Investing Place LLC*, 2019 UT App 37, ¶ 25, 440 P.3d 767 (cleaned up); *see* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.").

¶27 Wallace also asserts that the district court violated her due process rights by "forcing" her to proceed without an attorney with no explanation of her obligations regarding pretrial disclosures. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness. However, because these questions require the application of facts in the record to the due process standard, we incorporate a clearly erroneous standard for the necessary subsidiary factual determinations." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (cleaned up).[11]

---

11. Wallace also claims that the district court erred when it refused to estop Fugal from enforcing the pretrial disclosure deadlines. Wallace asserts that "she argued the elements of equitable estoppel by raising the issue of Fugal's counsel offering a vague extension" and Fugal's "misrepresenting that extension in oral argument before the trial court" in her rule 60(b) motion. "To the extent that [Wallace] did raise the claim, [her] argument was so cryptic and vague that it did not satisfy the preservation rule's specificity requirement." *See Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 145, 299 P.3d 990 (cleaned up); *see also Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 ("An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." (cleaned up)). "When an issue is not preserved in the trial

(continued…)

ANALYSIS

### I. The court did not abuse its discretion in granting Fugal's motion to exclude Wallace's documents and witnesses.

¶28    Under rule 26(d)(4) of the Utah Rules of Civil Procedure, "[i]f a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." "[A]s a general rule, we grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion. Accordingly, we will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling." *Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276 (cleaned up).

¶29    As a threshold matter, we acknowledge that "standards of review really do matter" and that we will affirm a district court's decision not necessarily "because we think it was the right decision but because of our deferential standard of review." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2015 UT App 261, ¶ 21, 361 P.3d 703 (Orme, J., concurring). Thus, even if we think a trial judge made the "wrong call," if that call is "within the broad range of discretion entrusted" to the judge, we will affirm it. *Id.*; *see also In re J.M.*, 2020 UT App 52, ¶ 42, 463 P.3d 66 ("The standard of review we apply [here] is so deferential that we must forebear disturbing the close call, even if we may view the facts in a different light." (cleaned up)).

---

court, but a party seeks to raise it on appeal, the party must establish the applicability of one of the exceptions to preservation to persuade an appellate court to reach that issue." *State v. Van Huizen*, 2019 UT 1, ¶ 21, 435 P.3d 202 (cleaned up). Wallace has not argued that any exception applies, so we decline to consider her equitable estoppel claim.

¶30    First, there is no question that Wallace's disclosures were untimely. The district court set the date of the trial to begin on January 6, 2020, making the deadline for pretrial disclosure December 9, 2019. Wallace did not file disclosures until December 16. Wallace asserts that several of the findings that the district court made in granting Fugal's motion to exclude documents and witnesses were erroneous: (1) that Hasenyager sought withdrawal due to irreconcilable differences rather than illness, (2) that Lani sought withdrawal for conflict of interest with Wallace rather than illness, (3) that Lani's motion to withdraw was granted on December 3 instead of December 11, (4) that Wallace "did not zealously seek representation," (5) that Wallace created excessive legal costs for Fugal, and (6) that confusion about Wallace's legal representation was "merely harmless error." But none of these alleged errors—and not even all of them combined—would have affected Wallace's ability to timely file disclosures, because she was represented—at the very least by Lani—at the time of the deadline.

¶31    Second, Wallace's failure to timely disclose her witnesses and documents was not harmless to Fugal. Wallace argues that the "court at the very least should have permitted [Wallace] to file her pretrial disclosures merely 7 days after the deadline" and that the "length of the delay and the delay's potential impact on judicial proceedings was non-existent," asserting, "A one week's delay is incredibly minimal." But being seven days late is not harmless when considered in the context of preparing for a trial that is less than one month away. And the seven-day delay would have been additionally harmful considering the time of the year (when there are several holidays) during which it occurred.

¶32    Wallace also argues that "[t]here existed no surprise for [Fugal in Wallace's] disclosures, as they are practically and for all purposes identical [to Fugal's disclosures], and [Fugal] has known about and has been preparing for these witnesses for a long period of time." But the harmfulness of the delay persists even though Wallace's disclosures were nearly identical to those offered by Fugal. As Fugal argues,

> It's accurate that [Wallace] appears to have largely copied the defense pre-trial disclosures. Indeed, the lack of preparation that went into [Wallace's] pre-trial disclosures only heightened the difficulty for defense counsel to prepare the case for trial. The purpose of pretrial disclosures—for [Wallace]—is to tell the defense what documents she will, in fact, present in her case in chief. There were hundreds of pages of medical records identified by [Wallace's] disclosure. Its lack of specificity made it more difficult (not less difficult) for [Fugal] to prepare its defense.

¶33 Third, Wallace did not show good cause for her failure to disclose. Wallace offers several excuses that she argues show good cause for her failure to timely file her disclosures: "Because of . . . Wallace's health, her counsel's health, and confusion as to who was representing her, as well as ignorance of due dates, . . . Wallace did not have the option to file her pretrial disclosures until sometime after December 13, 2019."

¶34 But the record is clear that Wallace was represented at the time the disclosures were due. And the record does not reflect a specific connection between Wallace's counsel's health and the untimely filing of the pre-trial disclosures. Any ignorance attributable to Wallace herself—as an allegedly pro se litigant—as to the due dates is irrelevant because Wallace was represented by Lani at the time the disclosures were due. Hasenyager was Wallace's counsel until the court granted his motion to withdraw on October 15. After October 15, Lani was representing Wallace, even though this may not have initially been clear to Wallace, Hasenyager, and Lani. But by November 7—the date Lani submitted her motion to withdraw, *supra* ¶ 7—it is clear that Wallace was still represented and that both Hasenyager and Lani were aware that Lani was still on the case. Thus, from November 7 until December 11 (when the court signed Lani's motion to withdraw), the record is clear that Wallace was represented by Lani and that Lani and Hasenyager were aware of Lani's

representation of Wallace. Significantly, the date on which the disclosures were due—December 9—fell within the period Wallace was represented by Lani.

¶35    Lani and Hasenyager also would have known that merely submitting a motion to withdraw was not enough to effect Lani's withdrawal as counsel. Lani's motion specifically and properly sought the court's "*permission* to withdraw as attorney" for Wallace because she and Wallace had "developed irreconcilable differences as to the handling of this case." (Emphasis added.) As the Utah Rules of Civil Procedure make clear, once a "trial has been set, an attorney may not withdraw except upon motion and order of the court." *See* Utah R. Civ. P. 74(a). Thus, because the trial date had been set, Lani knew that she could not merely *inform* the court of her withdrawal but would have to seek *permission* to withdraw—permission that she, in fact, sought. And that permission was not granted until the court signed the order to that effect on December 11, two days after the pretrial disclosures were due.

¶36    Moreover, once the alleged confusion arose over whether Bryce was representing Wallace, the district court noted that it would "hold" the order on Lani's motion to withdraw until the matter was clarified in the telephone conference. Only after the conference on December 10 did the court sign the order allowing Lani to withdraw. Thus, on December 9, when pretrial disclosures were due, Lani was representing Wallace.

¶37    In sum, having determined that Wallace did not timely file her pretrial disclosures, that her failure to disclose was not harmless to Fugal, and that—because she was represented at the time the disclosures were due—she cannot show good cause for her failure, we conclude that the district court did not abuse its discretion in granting Fugal's motion to exclude Wallace's documents and witnesses and in dismissing her case.

## II. The court did not violate Wallace's due process rights.

¶38    Wallace argues that the district court "deprived" her of the "constitutional right to due process when it forced her to proceed *pro se* and then defaulted her on a technicality." Wallace might have a good point if the court had indeed forced her to proceed pro se. But Wallace's assertion is built on a faulty factual foundation.

¶39    First, there is no evidence that the court forced Wallace to proceed pro se. While Wallace, Hasenyager, and Lani may have mistakenly understood that Wallace was representing herself for (at most) twenty-four days (from October 15, when the court signed the order allowing Hasenyager to withdraw, until November 7, when Lani filed her motion to withdraw), the record shows that Wallace was, in fact, represented by Lani continuously from her appearance in July 2017 until the court signed the order allowing Lani to withdraw on December 11, 2019. Indeed, the court made a point of delaying issuing its order allowing Lani's withdrawal until after Wallace had obtained new counsel. And after December 13—at the latest—either Bryce or Adams represented Wallace.

¶40    Second, there is no evidence that Wallace ever acted in a pro se manner, apart from sending a letter asking to extend time to find a new attorney or represent herself, which was filed when Lani was still counsel to Wallace. Except for this motion—filed well before disclosures were due on December 9, when there is no question that Lani represented Wallace—there is no indication that Wallace functioned as a pro se litigant in any substantive way. Put simply, Wallace never actually did anything pro se. And it is certainly true that Wallace was not acting as a pro se litigant anywhere near the critical time that her disclosures were due.

¶41    In sum, Wallace's due process rights were not violated. She was never compelled to act pro se, and there is no evidence that Wallace ever, in fact, acted pro se during the critical point at which her disclosures were due.

## CONCLUSION

¶42    The district court did not abuse its discretion when it granted Fugal's motion to exclude Wallace's documents and witnesses based on her untimely pretrial disclosures. And because she was represented by counsel at all relevant times and not forced to proceed pro se, Wallace's due process rights were not violated.

¶43    Affirmed.

———————