**2023 UT App 111**

## THE UTAH COURT OF APPEALS

SUSAN JEANNE CLARK,
Appellee,
*v.*
RICHARD LEE CLARK,
Appellant.

Opinion
No. 20210713-CA
Filed September 28, 2023

Fourth District Court, Heber Department
The Honorable Jennifer A. Brown
No. 184500153

Karra J. Porter and Kristen C. Kiburtz,
Attorneys for Appellant

Julie J. Nelson, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

OLIVER, Judge:

¶1      Richard Lee Clark appeals from the district court's decision
following a two-day divorce trial. Clark challenges several aspects
of the court's ruling, including a discovery sanction for his failure
to timely disclose his trial exhibits under rule 26 of the Utah Rules
of Civil Procedure; findings relating to his claim that his ex-wife,
Susan Jeanne Clark, dissipated the marital estate; and the court's
division of the marital property. We affirm the district court's
ruling with the exception of one aspect of the district court's
marital property determination, which we vacate and remand for
additional findings.

BACKGROUND

¶2 Richard and Susan[1] married in 2002, when Richard was in his sixties and Susan was in her fifties. Richard was retired from military service and from employment as an attorney with the Department of Justice. Susan owned a wallpaper business when she met Richard but quit working shortly after they married. For the next six years, Richard and Susan lived off Richard's retirement income from both the Army and the Department of Justice.

¶3 In 2008, Richard came out of retirement to work for a government contractor in Afghanistan, where he lived for thirty-eight months. During that time, Richard's retirement and employment income of $814,627 was deposited into a joint account that Susan controlled. Richard returned home to find "probably about $100,000 . . . had been saved" in the joint bank account—much less than he expected—yet he said nothing to Susan at that time.

¶4 Three years after his return, Richard moved into the basement of the marital home. The following year, in 2016, Susan transferred approximately $78,000 from their joint account into her personal account, prompting Richard to confront her about what he viewed as missing money from his time in Afghanistan. Two years later, in 2018, Susan filed for divorce. Shortly afterward, Richard purchased a Harley-Davidson motorcycle with financing, which he paid off in 2020.

¶5 At the time of their divorce, Richard and Susan owned two real properties—a condo in Norfolk, Virginia (Mooring Drive), and a home in Kamas, Utah (Ross Creek). Richard had purchased Mooring Drive before the marriage for approximately $205,000. In

---

1. Because the parties share the same surname, we refer to them by their first names, with no disrespect intended by the apparent informality.

2003, Richard added Susan to the title of Mooring Drive, which allowed her to vote at the condominium association's meetings and to join the board. The following year, Richard and Susan used equity loans on Mooring Drive to finance the purchase and construction of Ross Creek. From 2009—when Susan moved to Utah and Richard was in Afghanistan—until June 2019, Richard rented Mooring Drive out to others and the revenues were deposited into his separate account that was designated to pay for the property's expenses.

¶6      During their marriage, the parties took out an equity loan on Ross Creek that matured, along with one of the equity loans from Mooring Drive, in 2019. With the divorce still pending, Susan agreed to refinance Ross Creek's mortgage to pay off the two equity loans that were due, but only if Richard would stipulate that Mooring Drive and Ross Creek were marital property and were subject to equitable division in their pending divorce. Richard agreed, and the parties stipulated that "the Ross Creek and Mooring Drive properties shall remain marital property and shall be subject to equitable division in the parties' divorce notwithstanding that the Ross Creek home and Mooring Drive property will no longer be jointly titled."

¶7      In April 2019, the Mooring Drive tenants' lease expired. Richard decided he could only offer the tenants a month-to-month lease until his divorce was over. When the tenants declined to renew and moved out in June, Richard withdrew $30,000 from the joint bank account, claiming that he needed the funds to cover Mooring Drive's expenses. After a hearing, the court entered temporary orders in December 2019, permitting Richard to access equity in Ross Creek to pay off debt on Mooring Drive but denying his "request for financial relief based on the loss of rental income because [Richard] ha[d] not made any attempt to secure new renters."

¶8      Trial was originally scheduled for June 2020, but when the COVID-19 pandemic hit and courts were required to hold bench

trials virtually, Richard declined to proceed with a virtual trial, and it was continued without a date. In February 2021, the court held a pretrial scheduling conference and rescheduled the trial for May 2021. The court's pretrial order stated the parties must produce pretrial disclosures on or before April 26, 2021, pursuant to rule 26(a)(5)(B) of the Utah Rules of Civil Procedure.

¶9 Richard missed the deadline. A week after it passed, he requested a continuance to hire trial counsel. Richard had been representing himself as a pro se litigant despite being eighty-four years old and not having practiced law since 1988. According to Richard, health issues arose that made him "no longer physically and mentally capable of representing" himself. The court granted the motion, rescheduling the trial for June. The new deadline for pretrial disclosures became May 24, but Richard did not submit his pretrial disclosures until June 10—eleven days before trial.

¶10 The two-day trial began with Susan's objection to Richard's untimely pretrial disclosures. Susan contended that Richard had "ample opportunity" to produce his pretrial disclosures given the multiple continuances of the trial. In response, Richard claimed his failure to meet the disclosure deadline was harmless because he had previously produced as discovery responses the 339 pages of financial documents—including check registers, paystubs from 2008 to 2009, and bank account information from 2011 to 2012— that he sought to admit as exhibits 2 through 8. Yet Richard did not file certificates of service for those responses, and neither party's counsel could confirm whether Richard had previously sent the documents in exhibits 2 through 8 to Susan, leaving the district court with only Richard's testimony to support the claim that he had previously disclosed the exhibits. The district court sustained Susan's objection as to exhibits 2 through 8, excluding them from trial.

¶11 Both Susan and Richard testified at trial. Susan testified Richard had transferred $30,000 from their joint account to his personal account in June 2019 and contended she was entitled to

half of that amount. Susan also testified about her exhibits that provided recent balances in her bank and retirement accounts.

¶12    On cross-examination, Susan admitted she had not looked for work and was unemployed despite the court's urging in 2020 for her to seek employment. Richard then peppered Susan about numerous expenditures during his time in Afghanistan, to which Susan replied that it "was a number of years ago" and she "ha[d] no recollection at all" of the transactions. Susan did state, however, that when Richard left for Afghanistan, she recalled they "had very large credit card balances" that Richard instructed her "to start paying off" while he was away.

¶13    First testifying as Susan's witness, Richard answered questions about some of the marital property. He testified about a recent appraisal of Mooring Drive that valued it at $390,000, his three life insurance policies that all list Susan as the beneficiary, and his purchase of the Harley-Davidson in May 2019. Susan then introduced a pleading Richard had filed with the court in November 2019 that stated, in relevant part, he had "owned three motorcycles, selling the last one when [he] moved to Norfolk," but he has "never ridden a Harley-Davidson." Richard replied that he had "misstated the fact," both in that pleading and at a hearing the same month when he told the court he did not own a Harley-Davidson. Richard testified he should receive three-fourths of the equity in Mooring Drive because he purchased it before the marriage. Unable to provide a figure for what the property was worth when he married Susan, Richard claimed that "the[] prices have gone up and gone down a great deal" since their marriage, but his best guess was that Mooring Drive appreciated from $205,000 to $350,000 between 2000 and 2002. Richard continued to do some impromptu math on the stand to clarify how much equity he felt he was owed, asserting that since Mooring Drive was recently appraised at $390,000 and had been worth $350,000 in 2002—by his best guess—there is $40,000 of equity for them to divide, but then he admitted such valuation "is something I'm just not knowledgeable about."

¶14  As his own witness, Richard testified about Susan's alleged dissipation during his time in Afghanistan. Richard's excluded exhibits went to the issue of dissipation, so without the financial documents from that period, Richard sought to prove Susan "dissipated money while [he] was in Afghanistan" through his testimony about his earnings and typical expenses during that time frame. Using the excluded exhibits to refresh his recollection, Richard estimated their monthly expenses before he left were approximately $10,000 to $11,000. Richard also challenged Susan's testimony about credit card balances, claiming that "there weren't any large credit card balances before [he] left."

¶15  At the conclusion of trial, the district court asked both parties to submit proposed findings of fact and conclusions of law in lieu of closing arguments. After issuing an oral ruling, the district court memorialized its decision in written findings of fact and conclusions of law. The court found that Richard's "testimony was insufficient to establish his [dissipation] claim" and that Richard had "failed to meet his burden of demonstrating dissipation." The court also found "problems with the credibility of both parties," specifically finding that Susan's "credibility was lacking with regards to the dissipation issue" and Richard's "credibility was lacking with regards to his motorcycle purchase." Susan was awarded Ross Creek's equity, and Richard was awarded Mooring Drive's. The court awarded Susan $2,500 per month in alimony and an offset of $43,474 (from Richard's purchase of the Harley-Davidson and his $30,000 withdrawal from the joint account) "to achieve an equitable division of the estate." The court found Richard "withdrew $30,000 from the joint account without [Susan's] knowledge or consent and deposited it into his own personal account," but it made no findings as to how Richard spent the $30,000.

ISSUES AND STANDARDS OF REVIEW

¶16  Richard raises three main issues for our review. First, Richard challenges the district court's exclusion of his exhibits for

his failure to comply with rule 26(a)(5) of the Utah Rules of Civil Procedure. A district court "has broad discretion regarding the imposition of discovery sanctions," and when we apply "the abuse of discretion standard to the district court's imposition of a particular sanction, we give the district court a great deal of latitude." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 35, 215 P.3d 933 (cleaned up).

¶17 Second, Richard contends the district court erred in its application of the burden of proof on Richard's dissipation claim. A district court's "allocation of the burden of proof is . . . a question of law that we review for correctness." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2018 UT 62, ¶ 20, 435 P.3d 179.

¶18 Finally, Richard challenges the district court's division of the property, including the court's finding that the marital estate included Mooring Drive and the Harley-Davidson, and its decision to deduct from the marital estate the $30,000 Richard withdrew from the parties' joint account. A district court "has considerable discretion considering property division in a divorce proceeding, thus its actions enjoy a presumption of validity," and "we will disturb the district court's division only if there is a misunderstanding or misapplication of the law indicating an abuse of discretion." *Beckham v. Beckham*, 2022 UT App 65, ¶ 6, 511 P.3d 1253 (cleaned up).

ANALYSIS

I. Pretrial Disclosures

¶19 Richard asserts the district court abused its discretion in excluding his exhibits 2 through 8 for failure to comply with rule 26(a)(5) of the Utah Rules of Civil Procedure because he "produced the documents that comprised the exhibits" during discovery and any "technical non-compliance with that rule" was "harmless." We disagree.

¶20    Rule 26 governs "disclosure and discovery" in civil matters and requires parties to provide "a copy of each exhibit, including charts, summaries, and demonstrative exhibits, unless solely for impeachment, separately identifying those which the party will offer and those which the party may offer . . . . at least 28 days before trial." Utah R. Civ. P. 26(a)(5). A party who fails to timely disclose exhibits "may not use the undisclosed witness, document, or material at . . . trial unless the failure is harmless or the party shows good cause for the failure." *Id*. R. 26(d)(4). A district court "has broad discretion in selecting and imposing sanctions for discovery violations under rule 26," and "appellate courts may not interfere with such discretion unless there is either an erroneous conclusion of law or no evidentiary basis for the district court's ruling." *Wallace v. Niels Fugal Sons Co.*, 2022 UT App 111, ¶ 26, 518 P.3d 184 (cleaned up), *cert. denied*, 525 P.3d 1267 (Utah 2023).

¶21    Richard does not dispute that he failed to timely disclose exhibits 2 through 8. Instead, Richard argues he produced the documents in those exhibits to Susan in earlier discovery responses, so his failure to timely file pretrial disclosures was harmless, and he further argues that it was Susan's burden to prove she had not received them. In response, Susan asserts it was Richard's burden, not hers, to prove that he produced the documents earlier in discovery, and the failure to file his pretrial disclosures pursuant to rule 26(a)(5) was not harmless. We agree with Susan on both fronts.

¶22    First, "the burden to demonstrate harmlessness or good cause is clearly on the party seeking relief from disclosure requirements." *Dierl v. Birkin*, 2023 UT App 6, ¶ 32, 525 P.3d 127 (cleaned up), *cert. denied*, 527 P.3d 1107 (Utah 2023). Second, Richard failed to carry his burden of demonstrating harmlessness. Although Richard "assured [his counsel] that he [had] produced records related to this 2008-to-2012 timeframe," he did not file the required certificates of service. *See* Utah R. Civ. P. 26(f) (requiring a party to file "the certificate of service stating that the disclosure,

request for discovery, or response has been served on the other parties and the date of service"). Thus, Richard failed to prove that the documents had previously been produced.

¶23 But even if he had proved prior production, excusing pretrial disclosures if the documents were produced earlier in discovery would "eviscerate[] the rule that explicitly requires parties to" serve a copy of the documents they intend to use "in their case-in-chief at trial." *Johansen v. Johansen*, 2021 UT App 130, ¶¶ 19, 26, 504 P.3d 152 (rejecting argument to follow the spirit of rule 26 rather than "the plain language of rule 26" regarding pretrial disclosures); *see also* Utah R. Civ. P. 26(a)(5)(A)(iv) (requiring pretrial disclosure of "each exhibit" the party will or may offer at trial). And expecting a party to sort through hundreds, if not thousands, of pages of documents that were produced earlier by the other side during discovery and then expecting the party to predict which ones the opposing party might seek to admit at trial would be harmful and would violate the intent of rule 26.

¶24 Ultimately, "a court's determination with respect to harmlessness . . . . is a discretionary call," and our review of it "is necessarily deferential." *Johansen*, 2021 UT App 130, ¶ 11 (cleaned up). Thus, the district court was well within its "broad discretion" to exclude Richard's exhibits 2 through 8 under these circumstances. *See Wallace*, 2022 UT App 111, ¶ 26 (cleaned up).

## II. Dissipation

¶25 Richard claims the district court erred in finding that he failed to meet the burden of proof on his dissipation claim. We disagree.

¶26 "The marital estate is generally valued at the time of the divorce decree or trial." *Goggin v. Goggin*, 2013 UT 16, ¶ 49, 299 P.3d 1079 (cleaned up). "But where one party has dissipated an asset," the "trial court may, in the exercise of its equitable powers," "hold one party accountable to the other for the

dissipation." *Id*. (cleaned up). A court's inquiry into a dissipation claim may consider "a number of factors," such as "(1) how the money was spent, including whether funds were used to pay legitimate marital expenses or individual expenses; (2) the parties' historical practices; (3) the magnitude of any depletion; (4) the timing of the challenged actions in relation to the separation and divorce; and (5) any obstructive efforts that hinder the valuation of the assets." *Wadsworth v. Wadsworth*, 2022 UT App 28, ¶ 69, 507 P.3d 385 (cleaned up), *cert. denied*, 525 P.3d 1259 (Utah 2022).

¶27    The burden of proof for dissipation initially falls on the party alleging it. *See Parker v. Parker*, 2000 UT App 30, ¶ 15, 996 P.2d 565 (stating that a party seeking to assert dissipation must make an "initial showing of apparent dissipation"). The district court correctly concluded that Richard bore the "burden of demonstrating dissipation." To meet the "initial showing of apparent dissipation," the party alleging dissipation must first show evidence of dissipation. *Id*. ¶¶ 13, 15. Only after "present[ing] the trial court with evidence tending to show that [Susan] had dissipated marital assets" does the burden shift to Susan "to show that the funds were not dissipated, but were used for some legitimate marital purpose." *Id*. ¶ 13.

¶28    Richard's documentary evidence on this issue had been excluded by the court, so the only evidence he presented was his testimony in 2021 that his income while in Afghanistan from 2008 to 2012 exceeded the estimated historical marital expenses from before 2008, some thirteen years earlier. Richard asserts that his testimony alone should suffice for an initial showing of dissipation. In *Parker v. Parker*, 2000 UT App 30, ¶ 15, 996 P.2d 565, the husband "presented the trial court with evidence" that detailed how the wife had dissipated marital assets—exact beginning and ending balances for eight bank accounts, the marital expenses during the time in question, and specific checks the wife wrote to herself—thus shifting the burden to the wife. *Id*. ¶ 13. But Richard, like the wife in *Parker*, only "testified in

conclusory and cryptic terms," and thus "wholly failed to meet [his] burden." *Id*. ¶ 14.

¶29 Therefore, the district court was well within its discretion to decide that Richard's uncorroborated testimony about Susan's spending that occurred many years before either party contemplated divorce[2] was insufficient evidence to meet his initial burden of proving dissipation. Accordingly, the district court did not err in its finding that Richard failed to meet his burden of proof on the dissipation claim.

### III. Marital Property

¶30 Richard presents three challenges to the district court's division of the marital property. First, Richard asserts he is entitled to his premarital contribution to Mooring Drive. Second, he alleges the Harley-Davidson he purchased during the pendency of the divorce is his separate property. Third, Richard claims the court should not have deducted from the marital estate the $30,000 that he withdrew from the joint account in June 2019.

---

2. Susan invites us to join some other states in drawing a bright-line rule concerning the timing of a dissipation claim and limit pre-separation dissipation claims to those occurring (1) in contemplation of divorce or separation or (2) when the marriage is in serious jeopardy or undergoing an irretrievable breakdown. Under our caselaw, the district court is empowered to consider the "timing of the challenged actions in relation to the separation and divorce" as one of several factors when determining "whether a party should be held accountable for the dissipation of marital assets." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 33, 440 P.3d 757 (cleaned up). We see no need to alter this approach. Assessing timing as one factor among many provides the greatest flexibility to the district court to consider all the circumstances in a particular case, and we believe the district court is in the best position to evaluate the importance of such evidence on a case-by-case basis.

We affirm the district court's decision on Richard's first two challenges and vacate the decision on the third, remanding the matter for additional findings.

A.    Mooring Drive

¶31    Although the district court awarded Richard the equity in Mooring Drive when it divided the marital estate, it did not also award Richard any premarital equity in the property for three reasons. First, it found that Richard "formally stipulated that Ross Creek and Mooring Drive were marital property subject to division in this divorce action." Second, it found that "through a series of refinances, [Richard] transferred equity from Ross Creek to Mooring Drive, and paid expenses associated with both properties with marital funds." Third, it found that Richard "formally conveyed the property to himself and [Susan] in 2003" when he added Susan's name to the title. Because we affirm the district court's decision not to award Richard any premarital equity on the basis of the parties' stipulation, we do not address the other two reasons the district court relied upon.

¶32    Richard and Susan stipulated that "the Ross Creek and Mooring Drive properties shall remain marital property and shall be subject to equitable division in the parties' divorce, notwithstanding that the Ross Creek home and Mooring Drive property will no longer be jointly titled." Richard now claims that despite the language of the stipulation, he "never agreed that he should not be compensated for his premarital and separate contributions to Mooring Drive before the property became marital." Furthermore, Richard argues, "nowhere in the stipulation did he agree that he was waiving his premarital equity in that property."

¶33    Richard's argument is flawed. "Parties to a divorce are bound by the terms of their stipulated agreement." *McQuarrie v. McQuarrie*, 2021 UT 22, ¶ 18, 496 P.3d 44. And according to the "ordinary contract principles" that govern "contracts between spouses," *see Ashby v. Ashby*, 2010 UT 7, ¶ 21, 227 P.3d 246 (cleaned

up), "if the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language," *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (cleaned up). *See also Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 (holding that "the best indication of the parties' intent is the ordinary meaning of the contract's terms"); *Ocean 18 LLC v. Overage Refund Specialists LLC (In re Excess Proceeds from the Foreclosure of 1107 Snowberry St.)*, 2020 UT App 54, ¶ 22, 474 P.3d 481 (holding that where the "contract is facially unambiguous, the parties' intentions are determined from the plain meaning of the contractual language . . . without resort to parol evidence" (cleaned up)).

¶34 Richard essentially argues that the district court erred when it refused to go beyond the stipulation's language and infer his intention from what he omitted. But the district court was correct when it interpreted the parties' intentions by what the plain language of the stipulation *does* say and not by what it *does not*. Therefore, the district court did not abuse its discretion when it abided by the parties' stipulation and included Mooring Drive as marital property, "subject to equitable division."

B. The Harley-Davidson

¶35 "Prior to the entry of a divorce decree, all property acquired by parties to a marriage is marital property, owned equally by each party." *Dahl v. Dahl*, 2015 UT 79, ¶ 126, 456 P.3d 276. Thus, the presumption is that property acquired during the pendency of a divorce is marital, not separate. Richard failed to rebut this presumption regarding the Harley-Davidson motorcycle he purchased because he failed to present evidence that he used separate funds.

¶36 Richard argued that he purchased the Harley-Davidson from separate, rather than marital, funds in his proposed findings

of fact and conclusions of law.[3] To be clear, Richard does not assert that the Harley-Davidson is separate property because he purchased it after the parties separated or after Susan filed for divorce. Instead, he argues the only funds available to him to purchase the motorcycle came from his "separate premarital retirement income." Richard's argument fails for two reasons. First, Richard did not present evidence to support his argument that the funds he used to purchase the motorcycle came from separate, not marital, funds. Instead, Richard essentially places his burden on the district court by asserting, on appeal, that "[t]here was no marital account identified by the district court from which [Richard] could have made that purchase." But Richard, not the court, bears the burden of identifying where the funds came from that he used to purchase the motorcycle.

¶37    Second, the district court found credibility problems with Richard's testimony about the Harley-Davidson, concluding that Richard's "credibility was lacking with regards to his motorcycle purchase."[4] A district court "is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony" or "disregard such testimony if it finds the evidence self-serving and not credible." *Ouk v. Ouk*, 2015 UT App 104, ¶ 14, 348 P.3d 751 (cleaned up).

¶38    In sum, as "property acquired during [the] marriage," the Harley-Davidson is presumptively "marital property subject to equitable distribution." *Dahl*, 2015 UT 79, ¶ 26. Richard bore the burden of proof to rebut the presumption that the funds he used to purchase the Harley-Davidson were not marital, and he presented no credible evidence to the district court to support that

---

3. Because the district court directed the parties to submit proposed findings of fact and conclusions of law in lieu of closing arguments, Richard's argument was preserved for our review.

4. Indeed, in its oral ruling, the court stated that Richard "lied to the Court about the purchase of the motorcycle."

position. Thus, the district court did not abuse its discretion by including the motorcycle in the marital estate.

C.      $30,000 Offset

¶39    Finally, Richard challenges the district court's decision to include in the marital estate the $30,000 he withdrew from the joint account. The district court agreed with Susan that because Richard had made a unilateral withdrawal from the joint account during the pendency of the divorce, he should be held accountable for that withdrawal. Richard, on the other hand, claims he used the money for marital expenses, paying costs associated with Mooring Drive. Susan argues the money could also have been spent on personal items including travel and motorcycle payments and accessories. "How the money was spent, including whether [the] funds were used to pay legitimate marital expenses or individual expenses," *Wadsworth v. Wadsworth*, 2022 UT App 28, ¶ 69, 507 P.3d 385 (cleaned up), *cert. denied*, 525 P.3d 1259 (Utah 2022), is a critical question that needs to be resolved.

¶40    Divorce cases often require district courts to make numerous findings of fact. And generally speaking, "for findings of fact to be adequate, they must show that the court's judgment or decree follows logically from, and is supported by, the evidence" and such findings "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on *each* factual issue was reached." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 28, 70 P.3d 35 (cleaned up). Moreover, when it comes to the "unequal division of marital property," a district court must "memorialize[] in . . . detailed findings the exceptional circumstances supporting the distribution." *Bradford v. Bradford*, 1999 UT App 373, ¶ 27, 993 P.2d 887 (cleaned up). "Without adequate findings detailing why [one spouse] should be entitled to such an unequal split of the marital estate, we cannot affirm the court's award." *Fischer v. Fischer*, 2021 UT App 145, ¶ 29, 505 P.3d 56; *see, e.g., Rothwell v. Rothwell*, 2023

UT App 50, ¶ 57, 531 P.3d 225 (concluding that "we simply do not have enough information" to rule on whether the funds were marital or separate, "let alone to conclude that the district court . . . erred").

¶41 We face the same dilemma here. The district court made no findings as to how Richard spent the $30,000. The written ruling merely states, "In June 2019, [Richard] withdrew $30,000 from the joint account without [Susan's] knowledge or consent and deposited it into his own personal account." "We will not imply any missing finding where there is a matrix of possible factual findings and we cannot ascertain the trial court's actual findings." *Hall v. Hall*, 858 P.2d 1018, 1025–26 (Utah Ct. App. 1993). Without "adequate findings" on whether Richard used the funds for marital expenses or not, "we cannot affirm," nor properly review, the court's decision to offset the $30,000 against Richard in its division of the marital estate. *See Fischer*, 2021 UT App 145, ¶ 29. Therefore, we vacate this portion of the decision and remand the matter to the district court for it to enter findings on how the funds were spent.

## CONCLUSION

¶42 The district court did not abuse its discretion when it excluded Richard's exhibits for failure to comply with rule 26(a)(5) of the Utah Rules of Civil Procedure. The district court also did not err in its conclusion that Richard failed to meet the burden of proof for his dissipation claim nor did it abuse its discretion in how it divided the marital estate with respect to Mooring Drive and the Harley-Davidson. We vacate the district court's decision to offset the $30,000 against Richard when it divided the marital estate and remand the matter for the district court to enter additional findings and to alter its conclusion as may be necessary.