**2025 UT App 21**

## THE UTAH COURT OF APPEALS

DAVID THOMAS DUTCHER,
Appellant,
*v.*
AUDREY PARK DUTCHER,
Appellee.

Opinion
No. 20230332-CA
Filed February 21, 2025

Third District Court, West Jordan Department
The Honorable Chelsea Koch
No. 204904573

Troy L. Booher, Taylor P. Webb, and
Dean Andreasen, Attorneys for Appellant

Harry Caston, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

ORME, Judge:

¶1     David Thomas Dutcher appeals the district court's decree of divorce awarding his former wife, Audrey Park Dutcher, a portion of a brokerage account while also including line items for retirement and investment contributions in its alimony calculation. He also challenges the court's refusal to set aside the parties' stipulation regarding the value of the marital home. While we affirm the court's valuation of the marital home, we reverse the court's alimony award and remand that matter for recalculation.

BACKGROUND

¶2 David and Audrey[1] were married for 24 years, during which time they amassed "a substantial amount of wealth," including a brokerage account worth around $2 million at the time of their divorce and the marital home. David and Audrey have four children, three of whom were minors when David petitioned for divorce in August 2020. Custody of the children was hotly contested, and the parties eventually stipulated to the appointment of a parent-time evaluator (Evaluator).

¶3 When Evaluator submitted her report, her recommendation for overnight stays for David fell short of the statutory minimum. Apparently, as a matter of trial strategy, David decided to cross-examine Evaluator about this error rather than present a rebuttal expert witness. But five days before trial, realizing her mistake, Evaluator emailed the parties an amended report that increased David's overnights.

¶4 The issues certified for trial included custody, alimony, and the valuation of the marital home. Audrey and David had each obtained appraisals of the home, but in Audrey's pre-trial memorandum, she noted, "Pursuant to the appraisal conducted by [David's appraiser], the home has a present value of $1.7 million." David also submitted proposed findings of fact stating, "The parties stipulate that the marital home has a value of $1.7M."

¶5 A bench trial began in December 2021. David testified about the parties' brokerage account and reiterated the $1.7 million appraisal value of the marital home. He testified that the parties deposited and withdrew from the brokerage account but that they had not made significant contributions to the account until 2014, making substantial deposits in 2016, 2017, and 2018 when his "compensation was abnormal." At the time of trial, the

---

1. Per our usual practice, because the parties share a surname, we refer to them by their first names, with no disrespect intended.

brokerage account balance was $1,940,285. He also testified about his proposed division of the parties' assets, wherein one of them would receive the marital home and a portion of the brokerage account while the other would receive the balance of the account to purchase a new home and retain what was left of his or her account share. He proposed that under either arrangement, he should be left with $100,000 from the brokerage account and Audrey should receive $452,374. And he urged that he should receive the marital home. He also calculated Audrey's monthly expenses at $5,645 per month, including a $500 monthly contribution to her retirement. But with her imputed income, investment income, and child support, David calculated that Audrey would receive $9,449 per month—more than enough to cover her expenses without alimony.

¶6     An accountant (Accountant) David hired to summarize the parties' standard of living and to opine on the distribution of assets also testified about David's proposed division. Accountant testified that he had calculated the average return on the brokerage account to be 16.99% over the last five years. He testified that the rate had "been higher than that, but in prior years, it was lower." And he noted that the parties had used the account to both deposit and withdraw money. He testified that under either of David's proposed divisions of assets, with David receiving $100,000 from the account, he would likely receive $1,019 per month in investment returns. He also testified that with Audrey receiving $452,374 from the brokerage account, she would likely receive $4,611 per month in returns. But Accountant acknowledged that there was "no guarantee" on these returns.

¶7     Before the second day of trial, David filed a motion seeking to designate and call an expert witness to rebut Evaluator's amended report and trial testimony. Once trial began that day, David alerted the court to the motion, noting it was "highly atypical" but asserting there were "atypical facts" warranting it. David's counsel argued that because Evaluator's original

recommendation did not meet the statutory parameters for joint physical custody, he initially planned to file a motion with the court explaining the error with an eye to disqualifying the report rather than calling a rebuttal expert. But, David argued, now that Evaluator had amended her report, he needed to change his strategy and call a rebuttal expert to testify about custody. Counsel indicated that the expert witness he sought to call was not available to testify that day but "would make herself available as needs be." The court granted the motion and continued the trial to allow David to procure the rebuttal expert's testimony.

¶8　Due to scheduling conflicts, the trial did not resume until May 2022, some five months later. David informed the court that "both parties ha[d] updated a number of exhibits," including an "updated appraisal" of the marital home that valued it at $1.975 million, as opposed to the December 2021 valuation of $1.7 million. David sought to admit the updated appraisal with no objection from Audrey. David testified that he was asking the court to value the home based on this new appraisal. But he did not ask the court to set aside the prior stipulation. During her testimony, Audrey acknowledged that the home had been reappraised at a higher value, but she also opined that David's appraiser's "numbers have always been artificially high."

¶9　After trial, the court issued findings of fact and conclusions of law. The court declined to impute the returns on the brokerage account as income for either party, reasoning that "income earned on investments is unpredictable and would require" the court "to speculate with regard to earnings for every future month or year." Further, the court noted that dividing the account would "impact the income earned from the account" and that each party would receive a different percentage and would have "a different ability to invest going forward." And the court stated that because "the parties have traditionally used the investment account as a savings account and pulled from it only for limited purposes," it would be inequitable to treat the returns as income. The court also

noted "the disparity in the parties' ability to earn," "the parties' financial ability to invest any money in the future," and "the fact that the parties have lost hundreds of thousands of dollars in their investment accounts during only the pendency of this case." Thus, the court concluded that "[n]othing presented at trial" inspired confidence "in assigning a specific amount of potential monthly income to the assets each will receive in the property division." The court awarded Audrey the marital home and $556,737.50 from the brokerage account, with David receiving the balance from the brokerage account, $1,363,457.50, with which to purchase a new home while leaving him a balance in the account, depending on how much he used to buy the home.

¶10 In addressing alimony, the court found Accountant's "analysis helpful" but indicated it was "not persuaded that the lifestyle analysis summary is completely representative of the marital lifestyle" and declined to adopt David's proposal of Audrey's needs. The court chose to include $1,117 for retirement contributions and $1,823 for investment contributions in Audrey's monthly expenses for purposes of calculating alimony. It chose to value the marital home at $1.7 million, noting "the parties stipulated" to the value on the first day of trial and although David had submitted a new appraisal of $1.975 million, the parties had not stipulated to this new appraisal. The court also faulted David for the continuance of the trial, "for the sole purpose of allowing his newly designated rebuttal expert to testify with regard to parent-time," and found it would be "inequitable to set aside a stipulation that was addressed the first day of trial, prior to David's request to continue the trial, for a reason unrelated to the value of the home."

¶11 David filed a motion asking the court to amend its findings under rule 52 of the Utah Rules of Civil Procedure. He challenged the court's decision not to include the returns from the brokerage account as income for purposes of calculating alimony, the inclusion of investment and retirement contributions as part of

Audrey's monthly expenses in calculating alimony, and the "stale valuation" of the home as of December 2021 rather than as of May 2022.

¶12 While the court did amend its findings to correct certain mathematical errors and to address other minor objections raised by the parties, it declined to do so with regard to any of the issues David raised. With respect to Audrey's income, the court concluded that Accountant's estimated return rate "did not take into consideration the specific divisions of the account pursuant to the decree, nor the change in value after the decree, nor the disparity in contributions going forward that would impact the principal and returns." The court noted that the brokerage account returns were not "a reliable source of income" that the court felt "confident would *consistently* provide for each party over the next two decades." The court also refused to amend its findings regarding Audrey's investment and retirement contributions, concluding that "[b]oth parties testified that the marital standard included contributing to savings monthly." Finally, the court reiterated that it had valued the marital home at $1.7 million because the new appraisal, unlike the original valuation, had not been stipulated to by the parties.

¶13 The court then entered the divorce decree in March 2023, reflecting its amended findings. David appeals.

ISSUES AND STANDARD OF REVIEW

¶14 David challenges the district court's award of alimony to Audrey, arguing the court should have included the returns from the brokerage account as income, or, in the alternative, should not have included investment and retirement contributions as line items in calculating her monthly expenses. He also argues the court erred in valuing the marital home based on the parties' stipulation. "The court's valuation of the marital property, the manner in which it distributed that property, and its alimony

determination are all subject to the same standard of review." *Rothwell v. Rothwell*, 2023 UT App 50, ¶ 33, 531 P.3d 225 (quotation simplified), *cert. denied*, 537 P.3d 1011 (Utah 2023). Namely, "in divorce actions, a district court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Id.* (quotation simplified). "We can properly find abuse of the district court's discretion only if no reasonable person would take the view adopted by the district court, that is, if a misunderstanding or misapplication of the law resulted in substantial and prejudicial error, if the court's factual findings are clearly erroneous, or if the award is so seriously inequitable as to manifest a clear abuse of discretion." *Id.* (quotation simplified).

ANALYSIS

I. Brokerage Account

¶15　David argues the district court abused its discretion in excluding returns from the brokerage account in calculating Audrey's income for purposes of alimony. In the alternative, should we disagree, David argues the court abused its discretion in including line items for retirement and investment contributions in the calculation of Audrey's monthly expenses, given the size of her share of the brokerage account. We agree that the district court's alimony calculation should have either included the investment returns in calculating Audrey's income and included the line items for retirement contributions and savings in evaluating her need for alimony, or instead it should have excluded both.

¶16　"In determining whether a spouse should receive alimony, the general rule is that a court should first take care of property distribution." *Mintz v. Mintz*, 2023 UT App 17, ¶ 51, 525 P.3d 534, *cert. denied*, 531 P.3d 730 (Utah 2023). "Then, depending on how the property distribution works out—especially considering

income-generating property—the court considers whether alimony will be necessary for a spouse to meet demonstrated needs." *Id.* "If a payee spouse has income-producing property, the income from that property may properly be considered as eliminating or reducing the need for alimony by that spouse." *Rothwell v. Rothwell*, 2023 UT App 50, ¶ 89, 531 P.3d 225 (quotation simplified), *cert. denied*, 537 P.3d 1011 (Utah 2023).

¶17 Here, the district court declined to impute the returns from the brokerage account as income for either party. The court reasoned that "income earned on investments is unpredictable and would require" the court "to speculate" about future returns. The court noted that division of the account would affect its returns and the parties would have "a different percentage of the account going forward" and "a different ability to invest in the account going forward." The court also considered "the disparity in the parties' ability to earn," "the parties' financial ability to invest any money in the future," and the volatility of the market. Thus, it declined to impute any additional income to Audrey based on returns from her substantial share of the brokerage account.

¶18 In *Rothwell*, we concluded the district court did not abuse its discretion in deciding not to impute income to one party based on what she might earn "from investing her share of the marital estate" because "[w]hile the property in question had the potential to produce income if used in a particular way, there was nothing to suggest that the property had historically been income-producing." *Id.* ¶ 90. *See also Mintz*, 2023 UT App 17, ¶ 59 (holding that the district court did not abuse its discretion in failing to impute potential investment earnings as income where "neither party considered investment income as income to be spent or expended, but rather as a vehicle to increase savings and net worth") (quotation simplified). And in *Eberhard v. Eberhard*, 2019 UT App 114, 449 P.3d 202, we affirmed the district court's decision not to impute potential retirement income to one party

where the rate of return was disputed. *Id.* ¶¶ 24, 26. But neither of these scenarios is present here.

¶19　The district court noted that the parties had treated the brokerage account as a savings account and had pulled from it only on occasion. And Audrey did not present expert testimony to refute Accountant's testimony establishing an estimated return rate of 16.99%. In declining to impute Audrey's returns from the brokerage account as income, the court anticipated her using those returns as savings to re-invest. Fair enough. But it also included additional line items for both retirement and investment in calculating her expenses for purposes of alimony. We agree with David that this "double-counting" exceeded the sound exercise of the court's discretion. *See Sorensen v. Sorensen*, 839 P.2d 774, 776 (Utah 1992) (stating that double counting "is condemned in property division cases").

¶20　On remand, the court may decide to either include the returns from the brokerage account in its calculation of Audrey's income and include the line items in the alimony calculation or do the opposite, declining to impute the returns as income but also declining to include duplicative alimony line items. It may not do both.[2]

## II. Marital Home

¶21　David argues the district court abused its discretion in refusing to set aside the parties' stipulation to the value of the marital home. But we see no abuse of discretion here.

¶22　"Even when made on the record, a stipulation regarding property division in a divorce proceeding is not necessarily

---

2. Audrey argues that because David brought his appeal "in bad faith," she should receive attorney fees incurred on appeal. But because David prevails on this first issue, his appeal was obviously not in bad faith, and Audrey's request is denied.

binding on the trial court" and is "only a recommendation to be adhered to if the trial court believes it to be fair and reasonable." *Jensen v. Jensen*, 2008 UT App 392, ¶ 23, 197 P.3d 117 (quotation simplified). "While the court need not necessarily abide by the terms of the litigants' stipulations regarding property distribution, those stipulations should be respected and given great weight." *Batty v. Batty*, 2006 UT App 506, ¶ 2, 153 P.3d 827 (quotation simplified). And the parties themselves are "bound by the terms of their stipulated agreement." *Clark v. Clark*, 2023 UT App 111, ¶ 33, 537 P.3d 633 (quotation simplified).

¶23 Although David was bound by the terms of the parties' stipulation, he submitted an updated appraisal during the later trial dates. And he did not formally ask the court to set aside the prior stipulation. True, Audrey did not object to David's introduction of the new appraisal. Nor did she remind the court of the stipulation. But that prior stipulation was fair and reasonable, based on a professional appraisal. And the district court properly gave it "great weight." *Batty*, 2006 UT App 506, ¶ 2 (quotation simplified). Although it valued the marital home at the time of the first set of trial dates rather than at the time the decree was entered, as was done with the rest of the marital property, we cannot say that "no reasonable person would take the view adopted by the district court." *Rothwell v. Rothwell*, 2023 UT App 50, ¶ 33, 531 P.3d 225 (quotation simplified), *cert. denied*, 537 P.3d 1011 (Utah 2023). The court therefore did not abuse its discretion in valuing the marital home in accordance with the parties' stipulation.

CONCLUSION

¶24 While providing that investment returns from the brokerage account would not count as Audrey's income and simultaneously including additional line items in the alimony calculation for retirement and investment contributions exceeded the district court's discretion, valuing the marital home in

accordance with the parties' stipulation did not. We thus remand to the district court for recalculation of alimony in accordance with this opinion.

¶25    Affirmed in part, and reversed and remanded in part.

———————