2015 UT App 104

## THE UTAH COURT OF APPEALS

SIBEL JOHANNA OUK,
Petitioner and Appellee,
*v.*
SOVATPHONE OUK,
Respondent and Appellant.

Amended Memorandum Decision[1]
No. 20121015-CA
Filed April 30, 2015

Third District Court, Salt Lake Department
The Honorable Roger S. Dutson
No. 074905211

Mark L. Shurtleff, Attorney for Appellant

Bert L. Dart and Amy Hayes Kennedy, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES JAMES Z. DAVIS and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1      Sovatphone Ouk (Husband) and Sibel Johanna Ouk (Wife)
divorced in 2009. Husband appeals from the trial court's October

---

1. This Amended Memorandum Decision replaces the
Memorandum Decision issued March 12, 2015, *Ouk v. Ouk*, 2015 UT
App 57. In response to a petition for rehearing filed by Appellee
Sibel Johanna Ouk, we have added paragraph 19 and note 5 to this
amended decision.

2012 final order setting forth the distribution of marital property and awarding child support and attorney fees to Wife. We affirm.

¶2      Wife filed for divorce in December 2007. After a trial regarding the validity of the parties' prenuptial agreement, the court entered a decree of divorce in July 2009. A second trial was held in June 2012 on several remaining issues, including child support and distribution of marital property. After the second trial, the court ordered Husband to pay Wife child support for their two minor children in the sum of $1,760 per month and entered a judgment against Husband in the amount of $25,727 for unpaid child support that had accrued pursuant to an earlier temporary order. The trial court also determined that Wife was entitled to an award of $100,000 to compensate her for Husband's dissipation of marital assets. The trial court based this determination on its finding that Husband dissipated funds from a line of credit he took out on the marital home and proceeds from his sale of one of the parties' vehicles. Finally, the trial court ordered Husband to pay Wife's attorney fees and costs in the amount of approximately $95,000.

¶3      Husband first challenges the trial court's award of child support. Husband contends that the trial court erred in calculating the amount he was required to pay because the court failed to deduct necessary business expenses from Husband's gross income as required by Utah Code section 78B-12-203(4)(a). "The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Goggin v. Goggin*, 2013 UT 16, ¶ 44, 299 P.3d 1079 (citation and internal quotation marks omitted).

¶4      A noncustodial parent's child-support obligation is calculated using each parent's adjusted gross income. *See* Utah Code Ann. § 78-45-7.4 (LexisNexis 2002) (renumbered as Utah Code Ann. § 78B-12-207 (LexisNexis 2012)). When a parent is self-employed or operates a business, "[g]ross income . . . shall be

calculated by subtracting *necessary expenses required for self-employment or business operation* from gross receipts." *Id.* § 78-45-7.5(4)(a) (Supp. 2007) (emphasis added) (current version at Utah Code Ann. § 78B-12-203(4)(a) (LexisNexis 2012)). "Only those expenses *necessary to allow the business to operate at a reasonable level may be deducted* from gross receipts." *Id.* (emphasis added). Utah Code section 78-45-7.5(4)(a) "require[s] the person claiming business expenses to prove that those expenses are necessary to allow the business to operate at a reasonable level." *See Barrani v. Barrani*, 2014 UT App 204, ¶ 14, 334 P.3d 994 (citation and internal quotation marks omitted).

¶5 Husband argues that, in determining his gross income, the trial court was required to deduct from Husband's reported income the expenses he claimed in the financial declarations he submitted to the court. These declarations listed Husband's income and personal expenses for the years 2009, 2010, and 2011. The listed expenses included rent or mortgage payments for a residence, residence maintenance, food and household supplies, utilities, laundry and dry cleaning, and payments on cars. But the declarations do not contain any information about Husband's business expenses. Even assuming that the declarations contained information on legitimate business expenses, Husband failed to demonstrate that these expenses were necessary to allow his business to operate at a reasonable level. Husband also fails to point to any other evidence in the record from which the trial court could have determined that these were necessary business expenses. Because Husband failed to meet his burden of proving that these expenses were necessary to operate his business, the trial court did not abuse its discretion in refusing to subtract those expenses from his gross income.

¶6 Husband also claims that the trial court improperly imputed income to him in calculating child support. Husband argues that the trial court should have found that Husband was "voluntarily unemployed or underemployed prior to deciding to impute income," and that the trial court "failed to articulate any findings

with regard to [Husband's] 'employment potential and probable earnings'" as required by Utah Code section 78B-12-203(7)(b).

¶7    "[T]he imputation analysis . . . involves determining whether the [spouse] is voluntarily unemployed or underemployed and, if so, how much income ought to be imputed." *Rayner v. Rayner*, 2013 UT App 269, ¶ 7, 316 P.3d 455 (alterations and omission in original) (citation and internal quotation marks omitted). A person is "voluntarily unemployed or underemployed" when he or she "intentionally chooses of his or her own free will to become unemployed or underemployed." *Id.* (citation and internal quotation marks omitted).

¶8    We disagree, however, with Husband's claim that the trial court imputed income to him. Rather, the trial court estimated Husband's income based on his reported historical income in 2009, 2010, and 2011. While the court found that at the time of trial, Husband "was not living as lavishly as he normally lived," the court did not believe Husband's claim that he was "impecunious with no income." The trial court did not conclude that Husband was intentionally working less or actually earning less money, but rather that Husband was being deceitful about his income due to the inconclusive and unreliable documentation of current income he had filed with the court.[2] The trial court credited neither

---

2. The court found that Husband had directed employees or consultants "to file misleading and deceptive financial documents . . . in order to present an inaccurate financial picture." The court also determined that Husband had filed similar deceptive financial documents with the court. The court observed that Husband did not provide documentation requested by the court. For example, the court found that Husband did not provide evidence of current earnings of his business operations. The court also found Husband's claim of impecuniosity not credible and accordingly denied Husband's request to use the minimum wage as his income level for purposes of calculating child support. The court stated,

(continued...)

Husband's testimony nor the financial records Husband provided that purported to represent a significant decrease in his current income. Therefore, to determine Husband's gross income at the time of trial, the court used the amounts contained in Husband's sworn financial declarations and averaged his reported monthly salary from 2009 through 2011 in order to arrive at an appropriate estimate of Husband's actual monthly income. Because the trial court did not impute income to Husband, but rather simply estimated Husband's actual income by averaging his monthly income from his sworn financial declarations, the court was not required to undertake an imputation analysis or base that estimate on the factors outlined in the imputation statute.

¶9     Husband next challenges the trial court's determination that he dissipated marital assets. The trial court awarded Wife $100,000 after determining that Husband failed to document or trace his use of proceeds from a marital line of credit for a legitimate marital purpose.[3]

¶10     "The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Goggin v. Goggin*, 2013 UT 16, ¶ 44, 299 P.3d 1079 (citation and internal quotation marks omitted). Thus, this court will not disturb a court's "distribution of marital property unless it is clearly unjust

---

2. (...continued)
"[Husband's] pleas of poverty appear [to be intended] at least in part . . . to try and avoid his obligation to his spouse and children."

3. Husband does not challenge the court's finding that Husband dissipated $42,000 from the sale of a Mercedes, which was included in the $100,000 judgment awarded to Wife. Husband argues only that the trial court erred in finding that Husband dissipated the funds from the line of credit. However, because Husband frames his argument as a challenge to the entire $100,000 awarded by the court, we use the full $100,000 amount for clarity.

or a clear abuse of discretion." *Id.* (citation and internal quotation marks omitted). Showing such an abuse of discretion "is a heavy burden, and we can properly find abuse only if no reasonable person would take the view adopted by the trial court." *Id.* (citation and internal quotation marks omitted).

¶11   In a domestic case such as this, after an initial showing of apparent dissipation by one party, the burden shifts to the other party "to show that the funds were not dissipated, but were used for some legitimate marital purpose." *Parker v. Parker*, 2000 UT App 30, ¶ 13, 996 P.2d 565. Thus, the party who apparently dissipated assets bears the burden "to account for the missing money and demonstrate that it was spent to service or retire marital debt, to pay taxes for which both parties were responsible, to close the gap between income and reasonable living expenses, or for other marital purposes." *Id.* ¶ 15. If the court finds that a spouse has dissipated marital assets, "the court should calculate the value of the marital property as though the assets remained." *Goggin*, 2013 UT 16, ¶ 49 (citation and internal quotation marks omitted). And if "a spouse's behavior prevents the court from determining the precise amount of dissipated assets, the court should estimate, to the best of its ability, the upper limit of the amount of assets that the spouse may have dissipated." *Rayner*, 2013 UT App 269, ¶ 20 (citation and internal quotation marks omitted).

¶12   Here, Wife presented the trial court with evidence that in June 2010, Husband obtained a $185,000 line of credit on the marital home without her knowledge and that Wife never received any benefit or funds from that line of credit. Accordingly, Wife's initial showing shifted the burden to Husband to demonstrate that the funds from the line of credit were not dissipated and were used for a legitimate marital purpose. *See Parker*, 2000 UT App 30, ¶ 13.

¶13   In support of his argument that the funds were used for marital expenses, Husband states that he testified that $184,000 from the $185,000 line of credit went into his business, GMA, and was used "towards operations of the business, payroll and

overhead expenses."[4] Husband also called an accounting expert witness at trial to testify that the loan was "on the GMA side." The trial court did not find this evidence credible. On appeal, Husband argues that "[n]o evidence was presented that showed that the [line of credit] was used for anything other than running GMA" and that there was "no evidence upon which the trial court could have conjectured that the [money from the loan] was used by [Husband] personally or for some nefarious purpose." However, it was Husband who bore the evidentiary burden, which he cannot meet by pointing to a lack of contrary evidence. Husband also claims that because the court found that GMA was a marital asset, no other evidence was necessary to demonstrate that the funds were used for a marital purpose. But the trial court found that Husband did not meet his burden at trial to provide any evidence or documentation proving that all of the proceeds from the line of credit went into GMA and that the money was spent for the business.

¶14    "Clearly, the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony. Even where testimony is uncontroverted, a trial court is free to disregard such testimony if it finds the evidence self-serving and not credible." *Glauser Storage, LLC v. Smedley*, 2001 UT App 141, ¶ 24, 27 P.3d 565 (citations and internal quotation marks omitted). The trial court was in the best position to judge Husband's credibility, and in fact, the court ultimately determined that Husband was not forthcoming about the use of the full $184,000. The trial court found that Husband "treated all businesses and business assets as his personal assets and used them at will for his personal use and expenditures, as well as for business purposes"; that there had "been periods of business mismanagement, lack of effort to organize and properly handle important affairs of his businesses, and excessive spending for personal purposes"; and that Husband's credibility was "questionable in regard to marital

---

4. The court determined that GMA was a marital asset.

assets." Additionally, the testimony of Husband's expert witness that the loan was "on the GMA side" does nothing to explain how the money was actually spent. With no evidence of how the funds were actually used, the trial court could have reasonably concluded that the testimony of Husband and his expert witness to the effect that the money was used for "business" was not sufficient "to show that the funds were not dissipated, but were used for some legitimate marital purpose." *See Parker*, 2000 UT App 30, ¶ 13. Accordingly, Husband has failed to meet his burden on appeal to show that no reasonable person would take the view adopted by the trial court. *See Goggin*, 2013 UT 16, ¶ 44. Therefore, we conclude that the trial court did not abuse its discretion in finding that Husband had dissipated marital assets.

¶15 Last, Husband challenges the trial court's award of attorney fees to Wife. The trial court ordered Husband to pay $75,000 of Wife's attorney fees and $19,905.12 in costs. Husband argues that the court abused its discretion "when it ordered [Husband] to pay [Wife's] attorney's fees based solely upon the book value of the total equity of [Husband's] businesses, ignoring . . . loss to the value" of his businesses.

¶16 A trial court in a divorce proceeding may "order a party to pay the costs[ and] attorney fees . . . of the other party to enable the other party to prosecute or defend the action." Utah Code Ann. § 30-3-3(1) (LexisNexis 2007). Both the decision to award fees and the amount of such fees are within the trial court's discretion. *See Wight v. Wight*, 2011 UT App 424, ¶ 33, 268 P.3d 861. However, "the award [or denial of such fees] must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 30, 147 P.3d 464 (alteration in original) (citation and internal quotation marks omitted).

¶17 Here, the trial court adequately considered the evidence presented in determining that Husband could pay what Wife could not. The court found that Wife was unable to pay her attorney fees

because Wife was earning an income "barely sufficient to meet her needs." The trial court also found that Husband had millions of dollars in business assets and that Husband was unable to provide reliable and credible evidence to support his claims of poverty. Though the court recognized that Husband's financial situation had deteriorated, the court found not credible Husband's claim that he should not and could not pay these obligations. Specifically, the trial court found that on December 19, 2011, about six months before the second trial, Husband filed a financial declaration stating that the estimated value of GMA was $2,000,000. The court also found that in 2011, financial papers Husband filed with Wells Fargo Bank showed that another of Husband's solely owned companies had total equity of more than $2,000,000. Though Husband denied that he had the ability to pay Wife's attorney fees, he could not explain what had happened to the assets he had claimed to have only months before trial. In order to support his claim that he was unable to pay, Husband was required to present reliable evidence of his financial situation, and he failed to do so.

¶18    We conclude that the trial court was in the best position to determine which representations of Husband's financial position were the most reliable, *see Glauser Storage*, 2001 UT App 141, ¶ 24, and we defer to the trial court's assessment of the credibility of Husband's evidence and testimony, *see Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 27, 176 P.3d 476. The court's award of attorney fees was not an abuse of discretion, and its finding that Husband had the ability to pay Wife's legal fees "follows logically from, and is supported by, the evidence." *See Gardner v. Gardner,* 748 P.2d 1076, 1078 (Utah 1988) (citation and internal quotation marks omitted).

¶19    Finally, Wife requests an award of her attorney fees incurred on appeal.[5] "Generally, when the trial court awards fees in a

---

5. We note that the Utah Rules of Appellate Procedure require a party seeking an award of attorney fees to explicitly set forth that

(continued...)

domestic action to the party who then substantially prevails on appeal, fees will be awarded to that party on appeal." *Stonehocker*, 2008 UT App 11, ¶ 52 (citation and internal quotation marks omitted). Because the trial court awarded Wife attorney fees at trial and Wife has substantially prevailed on appeal, we award her attorney fees on appeal. We therefore remand this matter to the trial court for the limited purpose of determining the reasonable amount of attorney fees and costs incurred by Wife in connection with this appeal.

¶20    Affirmed.

––––––––––

5. (...continued)

request and the legal basis for the award in the argument section of its brief, not in the conclusion. See Utah R. App. P. 24(a)(9), (10). However, in this case, though Wife included her request for fees in the conclusion of her principal brief, we conclude that this technical deficiency in Wife's briefing does not merit a denial of her request for attorney fees on appeal.