**2024 UT App 16**

# THE UTAH COURT OF APPEALS

JOSEPH EARL LAMB,
Appellee,

*v.*

SONYA ELIZABETH LAMB,
Appellant.

Opinion
No. 20210787-CA
Filed February 8, 2024

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 174904728

Mary Deiss Brown, Attorney for Appellant

Gregory G. Skordas, Gabriela Mena, and Allison R.
Librett, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1      Joseph Earl and Sonya Elizabeth Lamb's divorce was
decided at a bench trial.[1] As relevant here, Joseph was awarded
custody of their children, ownership of a family business, and half
the equity of the marital home. Sonya now challenges the court's
custody determination and the award of the business. She also
challenges the manner in which the court determined the equity
in the marital home. We affirm the district court's rulings in all
aspects.

---

1. Because the parties share a surname, we refer to them by their
given names.

BACKGROUND[2]

¶2    Joseph and Sonya married in 2007 and separated in July 2017. We address separately each of the district court's determinations with which Sonya takes issue.

*The Custody of the Children*

¶3    Joseph and Sonya have three children, all of whom were minors when they divorced in August 2021. In November 2017, at a hearing for temporary orders, Sonya's counsel told the court that Sonya had been the children's primary caregiver "until recently." Sonya also admitted that she was arrested in July 2017 and was facing charges for possession and use of drugs, but she asserted that she had "taken responsibility," had "stopped using drugs," was "sober and more than capable of caring for the children and continuing on as their primary caregiver," and had "been attending Narcotics Anonymous and Al-Anon meetings." Sonya asserted that Joseph had a "serious drug addiction problem." Joseph claimed that Sonya had vacated the marital home shortly before her arrest, and he revealed that he obtained a protective order against her. The court acknowledged the allegations both sides made against the other but noted that Joseph currently had the children in his care and was living in the marital home. The court then determined that Joseph should maintain "custody of the children on a temporary basis."

---

2. As addressed below, neither party's briefs included sufficient citations to the record. This shortcoming has necessitated us combing the record to establish some semblance of a background, something we are not obligated to do. *See State v. Wright*, 2019 UT App 66, ¶ 47 n.6, 442 P.3d 1185 (explaining the parties' duty to cite the record in appellate briefs), *cert. denied*, 456 P.3d 391 (Utah 2019). Accordingly, our recitation of the facts is necessarily minimal as we limit it to what is essential to resolve the issues on appeal.

¶4 Apparently, the children remained in the temporary custody of Joseph until the parties' divorce trial, where the court received the testimony of a "reunification therapist" (Family Therapist), who had been hired by the parties after the custody evaluator had been "unable to perform an evaluation due to the children spending less than minimum time" with Sonya.

¶5 Based on the testimony of Family Therapist, which we recount when relevant in our analysis below, the court found that "unification" between Sonya and the two older children was "lacking" because of acrimonious relationships. The court noted that Family Therapist had testified that progress in reunification therapy would "influence what possible custody" Sonya might have in the future relative to the older children. The court determined that it was "in the best interest of the children that reunification therapy" continue to allow Sonya the opportunity "to reunify her relationship with the children."

¶6 Accordingly, the court found that it was in the children's best interest that Joseph be "awarded sole physical custody and final decision making authority," with both parties being awarded joint legal custody. With regard to the youngest child, the court awarded supervised parent-time to Sonya one night a week. The court awarded Sonya no parent-time with the older two children. The court noted that supervised parent-time for Sonya would "be flexible" and might "increase after the current reunification issues" and Sonya's "medical issues" were addressed. The court also stated that Sonya's "non-use of cannabis" needed to be verified because marijuana use was "a contributing factor" that brought on her mental health episodes.

*The Business*

¶7 During their union, the parties were financially supported, at least in part, by a business that distributed supplies to gas stations. During the divorce proceedings, Joseph maintained that he was in the process of purchasing the business from his father but that he did not have the money to pay for it. Joseph explained

that he drew a salary for his work with the business. In contrast, Sonya maintained that she and Joseph agreed to buy the business in 2010 and that they completed paying off the business in 2016. Sonya claimed that she and Joseph signed a document "to take over the business" but that she did "not have the document." Sonya did produce a different document that explicitly stated the business was being sold only to Joseph.

¶8 The district court awarded the business to Joseph, along with all its debts and obligations. In addition, the court, apparently recognizing that the business was possibly still owned by Joseph's father, ordered that any money Joseph borrowed against the marital home to purchase the business would "not be used to reduce the total equity in the home" so as to reduce Sonya's share of the home's value. In making this award to Joseph, the court was clear that it was basing its decision "on the testimony" provided by Joseph.

*The Marital Home*

¶9 Based on a Zillow estimate[3] provided by Sonya, the court determined the value of the marital home to be $998,659, but the equity in the home was reduced by mortgages and liens on the property. Joseph testified that three mortgages, totaling $402,000,

---

3. Neither party produced an appraisal of the home or an appraisal witness at trial, leading the court to ask the parties, "Does anybody have any valuation [of the home] at all?" Sonya's counsel answered, "Well, we could do it [with] Zillow." At this point, while in court, Sonya's counsel looked up the value and reported, "According to Zillow as of today, the estimated value is $998,659." No objection was lodged at trial to the court receiving this information. "Zillow is a commercial website that provides, among other things, an estimated market value for many residential properties." *Chaudry v. Chaudry*, No. 1794, 2021 WL 2910977, at *9 n.7 (Md. Ct. Spec. App. July 12, 2021).

were on the property.[4] And the home was additionally encumbered by eleven liens. Two of these liens, totaling $2,414, were attributed to Sonya and Joseph. The remaining nine, totaling $256,521, were tax liens and civil judgments incurred by the previous owner of the home.[5]

¶10    The court received evidence that when Joseph and Sonya purchased the home in November 2009, it was subject to some existing debt. Joseph testified as follows:

> *Counsel*: "Was there anything particular about that purchase [of the home]?"
>
> *Joseph*: "We didn't have the credit or the means to get into a home at the time, so my brother is a real estate agent and he's good friends with [the previous owner] and said, 'Hey, this house is available. If you like it, I can probably get you into it.' And so we took him up on that and (inaudible) that we had to take on (inaudible)."
>
> *Counsel*: "So there were other debts on that house when you purchased it?"
>
> *Joseph*: "Yes. . . . . I didn't know about all of them at the time, but yes."
>
> *Counsel*: "What are those debts?"

---

4. This number reflected the amount owing at the time of separation. At the bench trial, Joseph testified that the amount was currently about $298,000.

5. Joseph's counsel provided a LexisNexis report as evidence of the liens on the home. This report was admitted as evidence with no objection.

> *Joseph*: "There's a lot of tax liens from [the previous owner] throughout the years. There's a couple of (inaudible) from Sonya and I, medical bills that weren't paid. . . ."
>
> *Counsel*: "And have you paid off the tax liens? The liens on the house?"
>
> *Joseph*: "No."

Thus, in a somewhat unusual arrangement, the parties appear to have purchased the home subject to certain liabilities, even if they did not know the precise extent of those liabilities. Presumably, these liabilities would have been offset by a reduction in the purchase price, making the home more affordable.

¶11    Adding the mortgages and liens together for an amount of $660,935, the court determined that equity in the home was $337,724. The court ordered Joseph to pay Sonya $168,862 as her share of that equity.

¶12    Sonya appeals.

ISSUES AND STANDARDS OF REVIEW

¶13    Sonya identifies multiple ways in which she believes the district court erred. But "[f]or the sake of brevity," we "consolidate these grounds" and "set out in the opinion only so much . . . as we deem necessary to a decision of the questions involved herein." *Patterick v. Carbon Water Conservancy Dist.*, 145 P.2d 503, 505 (Utah 1944), *overruled on other grounds by Timpanogos Plan. & Water Mgmt. Agency v. Central Utah Water Conservancy Dist.*, 690 P.2d 562 (Utah 1984).

¶14    Sonya first contends that the district court abused its discretion in making custody and parent-time decisions because it lacked sufficient information to make those decisions. "We review custody determinations deferentially, and so long as the district court's discretion is exercised within the confines of the

legal standards we have set, and the facts and reasons for the decision are set forth fully in appropriate findings and conclusions, we will not disturb the resulting award." *Kingston v. Kingston*, 2022 UT 43, ¶ 20, 532 P.3d 958 (cleaned up).

¶15 Sonya next contends that the district court's findings were "entirely inadequate to explain" its reasoning for awarding ownership of the business to Joseph. "We review the legal sufficiency of factual findings—that is, whether the trial court's factual findings are sufficient to support its legal conclusions—under a correction-of-error standard, according no particular deference to the trial court." *Brown v. Babbitt*, 2015 UT App 161, ¶ 5, 353 P.3d 1262 (cleaned up).

¶16 Lastly, Sonya argues that the district court's "procedures and decisions regarding the division of equity in the marital home were illogical and manifestly unjust." "Determining and assigning values to marital property is a matter for the trial court, and an appellate court will not disturb those determinations absent a showing of clear abuse of discretion." *Mintz v. Mintz*, 2023 UT App 17, ¶ 12, 525 P.3d 534 (cleaned up), *cert. denied*, 531 P.3d 730 (Utah 2023).

ANALYSIS

I. A Note on Briefing

¶17 Sonya's briefing is plagued by significant deficiencies and does not comply with the Utah Rules of Appellate Procedure for appropriate briefing. First, excluding the cases cited for the standards of review, Sonya cites only a single case in her opening brief, and she does so in a perfunctory fashion—making only a shallow attempt to explain its relevance to the issues. Sonya continues this trend in her reply brief, where she cites no cases at all. In this regard, she falls far short of appellate expectations. "A party may not simply point toward a pile of sand and expect the court to build a castle. In both district and appellate courts, the development of an argument is a party's responsibility, not a

judicial duty." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248; *see also* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."); *id.* R. 24(b)(3).

¶18   Second, in her statement of the case, Sonya fails to include a single citation to the record. This is in contravention of our clearly stated rule. *See* Utah R. App. P. 24(a)(6) ("The statement of the case must include, with *citations to the record*: (A) the facts of the case, to the extent necessary to understand the issues presented for review; (B) the procedural history of the case, to the extent necessary to understand the issues presented for review; and (C) the disposition in the court or agency whose judgment or order is under review." (emphasis added)). We note that Sonya somewhat more adequately cites the record in the argument section of her brief, but that is not what the Utah Rules of Appellate Procedure require, and by ignoring the rules to suit her briefing preferences, she does little to bolster judicial efficiency.[6]

¶19   We point out these deficiencies not to ridicule, disparage, or shame counsel, but to provide warning that future briefing of this nature will likely be deemed inadequate and that any arguments on the merits may not be substantively considered by this court. This court receives hundreds of briefs each year. They vary in quality and in their adherence to the rules. We recognize that members of the bar have a lot on their plates and occasionally miss a typo or overlook a citation. But wholesale disregard of briefing rules is quite beyond the pale and can have unwelcome

---

6. Nor did Joseph's counsel provide a single citation to the record in his brief. This shortcoming is most unhelpful. While an appellee is not required to file a brief, *see, e.g.*, *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76, we observe that if a brief is filed, it would behoove counsel to provide record citations. After all, and at the risk of stating the obvious, record citations are required because in their absence it's difficult, and at times impossible, to figure out what the parties are referencing.

consequences for attorneys (and their clients) who choose this risky path. *See Ostler v. Department of Public Safety*, 2022 UT App 6, ¶ 27, 505 P.3d 1119 ("We . . . retain discretion to not address an argument that is inadequately briefed." (cleaned up)); *accord State v. Schwenke*, 2007 UT App 354U, para. 2; *State v. Garner*, 2002 UT App 234, ¶¶ 8–13, 52 P.3d 467. And we hasten to point out that the risk of ignoring briefing requirements should come as no surprise to any attorney in Utah owing to our multiple references to the issue over the years. *See Trees v. Lewis*, 738 P.2d 612, 612–13 (Utah 1987) (stating that the merits of a dispute need not be reached if an appellant "has not supported the facts set forth in [a] brief with citations to the record" as required by rule 24(a)(6) of the Utah Rules of Appellate Procedure); *State v. Price*, 827 P.2d 247, 249 (Utah Ct. App. 1992) ("We have routinely refused to consider arguments which do not include a statement of the facts properly supported by citations to the record."); *Koulis v. Standard Oil Co. of Cal.*, 746 P.2d 1182, 1184 (Utah Ct. App. 1987) ("If a party fails to make a concise statement of the facts and citation of the pages in the record where those facts are supported, the court will assume the correctness of the judgment below."). That we have exercised our discretion to address the merits of the issues on appeal here should not be taken as an imprimatur sanctioning inadequate briefing but as a conduit to raise awareness of the risk of ignoring the rules.

¶20   We take this occasion to recall the advice offered by our supreme court several decades ago:

> If the questions involved in a case are of sufficient importance to justify asking this court to decide them, they are worthy of the careful consideration of counsel presenting them. It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion.

*State v. Thomas*, 1999 UT 2, ¶ 13, 974 P.2d 269 (cleaned up). With that, we remind counsel of their responsibility to assist the

judiciary in advancing jurisprudence through diligent advocacy, adherence to our rules, and competent representation.

## II. Custody and Parent-Time

### A. Disclosure

¶21 Sonya argues that the district court erred in admitting Family Therapist's testimony when Joseph had not timely disclosed him as an expert witness pursuant to rule 26 of the Utah Rules of Civil Procedure, which requires disclosure "within 14 days after the close of fact discovery." Utah R. Civ. P. 26(4)(C)(i). Sonya's briefing on this point leaves much to be desired. She entirely ignores what happened at trial, instead substituting her own retrospective take on what she believes should have happened without attempting to explain why her timeliness argument should now be considered. Providing some persuasive caselaw—which may or may not exist—would have gone far to support her argument. But like the rest of her briefing, this part is inadequate.

¶22 A review of the record shows that Sonya did not object to Family Therapist's testimony on the grounds of untimely disclosure. Instead, Sonya argued that Family Therapist had "far exceeded any kind of mandate," that he had not signed confidentiality waivers, and that allowing his testimony created patient privacy and ethical violations. In her objection at trial, rule 26 was mentioned only in passing and not in a way that would suggest she was objecting on timeliness grounds. It certainly would not have been clear to opposing counsel that a rule 26 timeliness issue was being raised such that he would have known to argue a harmlessness or good-cause defense for the failure to disclose, which would have been an easy argument to make given that both Joseph and Sonya had jointly retained Family Therapist and Sonya knew about Family Therapist several years before trial. And it would not have been clear to the district court that it was being asked to rule on a timeliness-based objection. For these reasons, Sonya did not preserve any such objection for appellate

review. *See State v. Centeno*, 2023 UT 22, ¶ 57, 537 P.3d 232 ("It is well established that we will not address the merits of an unpreserved issue absent a showing that an exception to the preservation rule applies.").

B.     Hearsay

¶23   Sonya additionally argues that Family Therapist's testimony, insofar as he testified as a fact witness, "was inadmissible hearsay and based entirely on his conversations with the parties and their children as their reunification therapist." Sonya's hearsay argument is difficult to follow and poorly briefed. Instead of analysis in support of her hearsay argument, she provides scant and unsupported assertions.

¶24   Sonya objected below to Family Therapist's testimony on the grounds that it was hearsay. But the court ruled that it was not hearsay, concluding that Family Therapist's testimony was not offered "for the truth of the matter asserted." Rather, the court ruled that the "focus of [the] questioning" was, first, to allow the court "to find out how [the children were] doing, if they're capable of going forward" and, second, to identify the present "obstacles" to "structuring visitation with [Sonya]." On appeal, Sonya makes no attempt to engage with the court's reasoning, instead limiting her analysis to a blanket assertion that "it [was] evident" Family Therapist was "allowed to testify as an expert, offering hearsay, opinions and recommendations in [a] manner that simply is not permitted by the Rules of Civil Procedure." Such superficial and undeveloped argument is simply not persuasive, most especially because it does not address the alleged error in the court's reasoning. It is well settled that appellants who fail to "address the district court's reasoning" also fail to carry their "burden of persuasion on appeal." *See Federated Cap. Corp. v. Shaw*, 2018 UT App 120, ¶ 20, 428 P.3d 12; *see also Spencer v. Spencer*, 2023 UT App 1, ¶ 27, 524 P.3d 165; *Bad Ass Coffee Co. of Haw. v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 48, 473 P.3d 624.

C.     Custody Factors

¶25     Sonya next argues that the court did not address the custody factors outlined in section 30-3-10 of the Utah Code, making its custody findings insufficient. More specifically, Sonya argues that the court's factual findings were deficient due to the court's reliance on the testimony of Family Therapist in making those findings.

¶26     Section 30-3-10 states that in "determining any form of custody and parent-time . . . , the court *shall* consider the best interest of the child and *may* consider . . . other factors the court finds relevant," including factors for each parent articulated in the code. Utah Code § 30-3-10(2) (emphasis added). These factors a court may consider are "not on equal footing." *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491. Instead, "it is within the trial court's discretion to determine, *based on the facts before it* and within the confines set by the appellate courts, where a particular factor falls within the spectrum of relative importance and to accord each factor its appropriate weight." *Id.* (emphasis added). "And where significant evidence concerning a particular factor is presented to the district court, findings that omit all discussion of that evidence must be deemed inadequate." *Twitchell v. Twitchell*, 2022 UT App 49, ¶ 21, 509 P.3d 806. Thus, to "ensure that the trial court's custody determination, discretionary as it is, is rationally based, it is essential that the court set forth in its findings of fact not only that it finds one parent to be the better person to care for the child, but also the basic facts which show why that ultimate conclusion is justified." *Id.* ¶ 24 (cleaned up).

¶27     Here, the factors about which the court received significant evidence concerned Sonya's ability to function as a parent, which the court received as testimony from Family Therapist. As we have explained above, Sonya's challenges to the admissibility of Family Therapist's testimony fail, and we accordingly conclude that the district court acted well within its discretion in relying on his testimony.

¶28 Regarding Sonya's ability to parent the two older children, Family Therapist testified that they were "very angry" with Sonya and "announced that they would never see or talk to her again." Their anger was due to their religious sensibilities and Sonya's announcement that she was pregnant by a man other than their father during the pendency of the divorce.

¶29 With regard to Sonya's parenting, Family Therapist stated that the youngest child was very frightened after "his last visit with [Sonya] when she was struggling psychiatrically." Moreover, Family Therapist also testified the youngest child was beginning to see himself as Sonya's "partner," resulting in the child "becoming parentified."[7]

¶30 Family Therapist further indicated that while he was unaware of Sonya's "current condition or functioning," Sonya had been "hospitalized and diagnosed with some issues." He asserted that "safety" needed to be addressed, meaning that Sonya required a psychiatric evaluation to demonstrate that her "situation" was "under control." He also indicated that Sonya needed to work on "being forthright with medications." Sonya, by her own admission, had "suffered an isolated manic episode" related to bipolar disorder and "called the police for assistance" because she was suffering from "visual and auditory hallucinations."

¶31 Sonya's briefing on this point misses the mark because it entirely relies on the assumption that Family Therapist's testimony was inadmissible, an assumption we conclude is

---

7. "Parentification is often referred to as growing up too fast. Typically, it occurs when a child takes on parental responsibility for their siblings or even their parents, taking care of a sibling or parent physically, mentally, or emotionally. This can damage a child's mental well-being and lead to long-term mental health conditions such as depression and anxiety." Amber Felton, *What Is Parentification*, Web MD, https://www.webmd.com/parenting/what-is-parentification [https://perma.cc/N6TT-Y7QN].

without foundation. *See supra* ¶¶ 21–24. She does not explain why, in light of Family Therapist's admissible testimony, the court's consideration of the statutory custody factors was insufficient. Sonya's briefing makes no attempt to explain why the court is not allowed to rely on the evidence it receives when making custody decisions.

¶32 Moreover, Sonya does not identify any "significant evidence," *see Twitchell*, 2022 UT App 49, ¶ 21, as to the other factors in section 30-3-10 that the court received but left unaddressed. Instead, her briefing advances an argument that is entirely conclusory and unsupported by record citation or legal authority:

> Although § 30-3-10 gives broad discretion to the court as to the relevance and appropriate weight to give each factor, the district court in this case simply did not have any information that would allow it to make findings as to most of the statutory factors. For instance, the district court did not know who the primary caretaker of the children during the marriage was. The district court did not know anything about the marriage. The district court would not permit any testimony relevant to Joseph's moral character or his history of drug abuse and sexual proclivities. The Court would not allow any testimony as to Joseph's inability and unwillingness to co-parent with Sonya. At the end of the day, the Court simply sidestepped its responsibility as an independent factfinder and deferred to [Family Therapist].

This might be a good argument if Sonya had supported it with citations to the record and to legal authority. As this argument stands before us, we are unable to verify what it asserts. But we suspect that Sonya might be indulging in hyperbole here. Indeed, Sonya's assertion that "the district court did not know anything

about the marriage" is patently false. Our review of the record indicates that the court, in fact, knew quite a bit about the marriage, such as its financial situation, issues related to the children, and the problems that led to its demise, to name just a few topics within its familiarity. And with regard to Joseph's alleged use of illegal drugs, we found only one instance (subsequently echoed by Sonya's attorney) in the record where Sonya asserted before the district court that Joseph had a "cocaine habit." But the district court was free to "disregard such testimony if it [found] the evidence self-serving and not credible," since the factfinder "is in the best position to judge the credibility of witnesses." *See Clark v. Clark*, 2023 UT App 111, ¶ 37, 537 P.3d 633 (cleaned up). An isolated allegation made in passing certainly does not amount to "significant evidence," *see Twitchell*, 2022 UT App 49, ¶ 21, especially given the district court's role as the factfinder to judge the credibility of witnesses, *see Ouk v. Ouk*, 2015 UT App 104, ¶ 14, 348 P.3d 751. And as to the other statutory custody factors that Sonya asserts the court left unaddressed, she has not pointed us to any significant evidence that the court received with respect to those factors.

¶33 Thus, unlike the situation in *Twitchell*, where we concluded "that the district court exceeded its discretion by failing to include in its findings any discussion of the evidence relating to the abuse allegations against [the mother], her alleged neglect of [the child,] and her moral character, as well as the effect that evidence had on its best-interest analysis," *see* 2022 UT 49, ¶¶ 22–23, 25, here there simply wasn't significant evidence presented regarding section 30-3-10's other custody factors. This lack of evidence—insofar as there was a lack—was not the court's fault; it was Sonya's fault for not presenting it. After all, a court cannot be faulted for failing to consider evidence that was not presented to it. In contrast, given the substantial evidence the court did receive about the serious mental health issues Sonya faced, we conclude that the district court did not abuse its discretion in its consideration of the statutory factors when determining that awarding physical custody to Joseph was in the best interest of the children.

¶34     In sum, Sonya has failed to show that the district court abused its discretion in accepting and relying on the testimony of Family Therapist in making custody determinations or that the district court did not properly address the statutory factors in determining custody of the children.

### III. Ownership of the Business

¶35     Both parties agree that the district court concluded that the business was not a joint marital asset. The district court awarded the business to Joseph "[b]ased on [Joseph's] testimony." Along with awarding the business to Joseph, the court stated that Joseph was "responsible for payment of the purchase price of the business."

¶36     Sonya's briefing on this point is challenging because it consists largely of recounting financial matters pertaining to the marriage but unrelated to the ownership of the business. She then asserts, with no discernible effort to explain why, that the "findings/conclusions were entirely inadequate to explain the Court's reasoning for giving ownership" of the business to Joseph. Her argument is difficult to follow, but its essence, insofar as we can tell, appears to be that the court erred in believing Joseph's testimony over hers.

¶37     We disagree with Sonya that the court erred in crediting Joseph's testimony regarding the ownership of the business over Sonya's. Again, the court stated in its factual findings that its award of the business to Joseph was "[b]ased on [his] testimony." In making this credibility determination, the court acted well within its discretion. "[W]here there exists evidence sufficient to support a court's rulings regarding a divorcing couple's finances, that ruling will be upheld on appeal, even if evidence was presented that might have cut the other way." *Clarke v. Clarke*, 2023 UT App 160, ¶ 27. This is because "the fact-finder is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony. Even where testimony is uncontroverted, a trial court is free to disregard such testimony if

it finds the evidence self-serving and not credible." *Ouk v. Ouk*, 2015 UT App 104, ¶ 14, 348 P.3d 751 (cleaned up); *see also Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733 ("[I]t is the trial court's singularly important mission to consider and weigh all the conflicting evidence and find the facts.").

¶38    Here, the district court was in the best position to judge the credibility of the parties. It clearly found Joseph's testimony regarding the ownership of the business to be more credible. Sonya has provided no reasoned argument—apart from her assertion that she disagrees with it—as to why the district court's conclusion that the business was not marital property was erroneous. Accordingly, Sonya has failed to meet her "burden on appeal to show that no reasonable person would take the view adopted" by the district court, and we therefore conclude that the district court did not err in awarding the business, along with its liabilities, to Joseph. *See Ouk*, 2015 UT App 104, ¶ 14.[8]

### IV. Equity in the Marital Home

¶39    Sonya's final claim is that the district court abused its discretion in dividing equity in the marital home. "In divorce

---

8. Sonya also argues that the district court violated her constitutional due process rights by its "ongoing interference" with her counsel's presentation of her case. Quite frankly, apart from a litany of complaints about the court requiring counsel to keep her questioning relevant, the contours of her argument on appeal are difficult to discern, and she fails to cite a single case in support of the argument. Accordingly, we decline to consider her due process argument because it is inadequately briefed. *See* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."); *see also Orlando Millenia, LC v. United Title Services of Utah, Inc.*, 2015 UT 55, ¶ 30 n.3, 355 P.3d 965 ("The briefing on this claim . . . is inadequate. [The appellant's] briefing on this issue fails to cite any authority and makes no attempt to connect the law to the facts of this case.").

actions, a district court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Gardner v. Gardner*, 2019 UT 61, ¶ 18, 452 P.3d 1134 (cleaned up). Thus, in such proceedings,

> we will reverse only if (1) there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error; (2) the factual findings upon which the award was based are clearly erroneous; or (3) the party challenging the award shows that such a serious inequity has resulted as to manifest a clear abuse of discretion. Because we can properly find abuse only if no reasonable person would take the view adopted by the trial court, appellants have a heavy burden to show that an alleged error falls into any of these three categories.

*Id.* (cleaned up).

¶40 Sonya's claim focuses on three aspects of the court's valuation of the home: (1) the mortgage amount, (2) the use of the Zillow estimate, and (3) the amount of the liens on the home. We address each in turn.

¶41 **The Mortgage Amount.** Sonya complains that the district court, based on Joseph's testimony, should have used $298,000 as the amount owing on the mortgages rather than $402,000, an adjustment that would have benefitted her by increasing the equity she would have received. "Generally, the marital estate is valued at the time of the divorce decree or trial. However, in the exercise of its equitable powers, a trial court has broad discretion to use a different date, such as the date of separation, when circumstances warrant. If the trial court uses a date other than the date of the divorce decree, it must support its decision with sufficiently detailed findings of fact explaining its deviation from the general rule." *Rothwell v. Rothwell*, 2023 UT App 50, ¶ 39, 531

P.3d 225 (cleaned up), *cert. denied*, 537 P.3d 1011 (Utah 2023). In response to Sonya's motion for amended findings, the court explained, "[Joseph's] statement of the mortgage balance of $298,000 was referring to the total amount of all three (3) mortgages. The Court also took that into evidence taking into account that it was [Joseph's] best estimate according to what his monthly mortgage payments are and how much was deducted from the principal each month." We understand this to mean that the court took into consideration that it was through Joseph's extraordinary post-separation payment efforts that the mortgage amount had been reduced. Moreover, Sonya concedes in her reply brief that it was within the district court's discretion to use the earlier mortgage total. Accordingly, we see no abuse of discretion in the court's use of the date of the separation to determine the amount of the mortgages.

¶42    **The Zillow Estimate.** Sonya next complains that the home should have been valued at about $260,000 more than was indicated by the Zillow estimate the court used. The glaring problem with this aspect of Sonya's complaint is that it was her counsel's idea to use the Zillow estimate. In open court, her counsel looked up the estimate and announced it to the court. And the court proceeded to base its calculations on the very data Sonya's counsel supplied. We simply will not countenance Sonya's assertion that the district court erred in proceeding to use the estimate that Sonya herself, through counsel, provided. Sonya invited any error in this regard. *See Somer v. Somer*, 2020 UT App 93, ¶ 14, 467 P.3d 924 ("Where a party makes an affirmative representation encouraging the court to proceed without further consideration of an issue, an appellate court does not consider the party's objection to that action on appeal." (cleaned up)). In her briefing on appeal, Sonya points to nothing in the record that would have allowed the court to value the home using anything other than the Zillow estimate. Sonya does not challenge that the court acted on the only information it had and that Sonya herself provided. Accordingly, "given the absence of any expert financial testimony, . . . the paucity of assistance the parties offered the court," and the representations made by Sonya's counsel

regarding the marital home's value, we conclude that "the court in this instance made findings within its discretion and supported by the evidence it was given." *Clarke v. Clarke*, 2023 UT App 160, ¶ 55.

¶43 **The Liens.** Sonya argues that the district court abused its discretion in counting third-party liens against the equity in the home. Given the evidence the court received, we see no error on the part of the court in this regard. Indeed, there was evidence to support the court's determination that the third-party liens should be included in the calculation of the home's equity. Joseph testified that when he and Sonya purchased the home, they did so knowing that they were assuming responsibility for some of the previous owner's debts. This is an admittedly odd arrangement, but Joseph testified that they were willing to accept it because they were not in a financial position to purchase the home otherwise. Sonya offered no testimony or other evidence to contradict Joseph's assertion, and she still points to nothing presented at trial that contradicted this evidence. Accordingly, we conclude that the factual findings that included the liability associated with the third-party liens were not clearly erroneous and that the court did not abuse its discretion in calculating the home's equity.

CONCLUSION

¶44 Sonya has not demonstrated that the district court abused its discretion in its custody determination, in awarding the business to Joseph, or in its division of equity in the marital home. Affirmed.

_____